**Marcie THOMA, Plaintiff,**

v.

**A.H. ROBINS COMPANY, Defendant.**

**Civ. A. No. 80–1745.**

United States District Court,
D. New Jersey.

Nov. 2, 1983.

On Motion For Reconsideration
and Reargument Dec. 19, 1983.

Robert T. Lehman, Archer & Greiner, P.C., Haddonfield, N.J., for plaintiff.

James B. Moran, Michael B. Oropollo, Hoagland, Longo, Oropollo & Moran, New Brunswick, N.J., for defendant.

## OPINION

BROTMAN, District Judge.

Presently before the court are three motions, two by defendant A.H. Robins, and one by plaintiff Marcie Thoma. Defendant makes a motion *in limine* to exclude evidence that it believes is irrelevant to the present case, a suit for injury allegedly caused by defendant's Dalkon Shield, an intrauterine contraceptive device ("IUD"). Defendant's other motion asks the court to admit out-of-state counsel *pro hac vice.* Plaintiff moves to strike defendant's motion *in limine* as a sham pleading pursuant to Fed.R.Civ.P. 11. Jurisdiction is conferred on this court by 28 U.S.C. § 1332, diversity of citizenship of the parties. For the reasons which follow, both of defendant's motions will be denied and plaintiff's motion will be dismissed.

*Procedural history of the case*

Plaintiff filed her complaint on June 12, 1980. Throughout the course of this case, the court has received submissions by defendant that were not tailored to the issues in the present case, but were apparently submissions used in other cases. This has caused considerable delay in handling the case, prevented meaningful discovery and hindered the efforts of the Federal Magistrate to prepare this case for trial. A few examples will suffice.

Magistrate James F. Hammill, in his Letter Opinion and Order of May 25, 1983, discussed defendant's Exhibit List. He stated:

At the conference on the afternoon of May 23, 1983, defense counsel submitted as an annexed exhibit list a list of exhibits apparently taken from the case of *Williams v. A.H. Robins Company, Inc., et al* in the Eighteenth Judicial District of Sedgwick County, Kansas, Civil Department. The list contained exhibits numbered consecutively from 1,000 up to and including 1,591. The list does not appear to be tailored to the above-captioned civil action pending in the United States Courts and such a highly generalized cursorily prepared list from a case of uncertain and unknown origin is of little pertinence and assistance to the court as an exhibit list in a Joint Final Pre-Trial Order that is submitted consistent with the Federal Rules of Civil Procedure and the Rules of Practice and Procedure in this District. Accordingly, defense counsel was directed to revise, renumber and coordinate the exhibit list with the proposed exhibit list of counsel for plaintiff so that it would be both better referenced and more importantly, germane to the litigation before the court. The revised exhibit list is due on or before the close of the business day on May 31, 1983.

On May 31, 1983, defendant submitted the identical exhibit list which it had previously submitted. In a Letter Order of June 10, 1983, Magistrate Hammill commented:

In passing, I note that Robins has seen fit to submit this very same exhibit list in the case of *Griffin v. A.H. Robins,* Civil Action No. 81–3148 pending before Judge Cohen in this court.

Despite my directives, defense counsel has not even renumbered the list and referenced it in the fashion that counsel for plaintiff did. Defense counsel was directed to do this in my letter of May 25, 1983 at page 2.

A second example of defendant's non-responsive and generalized submissions concerns the testimony of defendant's expert witnesses. At the preliminary pretrial conference of December 30, 1980, defendant agreed to produce reports of its experts. More than a year passed and still defendant

did not produce any reports of experts. On January 19, 1982, defendant wrote to Magistrate Hammill that

> with regard to the answers to interrogatories, the questions deal with experts and I have not obtained any experts to date.... If your Honor insists that I try to obtain experts' reports before the [March 24] conference, I would ask that I at least be given until the date of the conference to do so....

Correspondence of Michael B. Oropollo, January 19, 1982.

On December 2, 1982, Magistrate Hammill conducted a pretrial conference call. He entered an order directing defendant to

> provide experts' reports to the plaintiff not later than February 1, 1983, and based upon the history of this case, if that is not done, I shall recommend to Judge Brotman that the defenses of the defendant be stricken and that the matter proceed to judgment after a hearing to determine the nature and extent of plaintiff's damages.

On January 28, 1983, defendant produced six experts' reports of which plaintiff contends that five contained

> boiler plate paragraphs which had been prepared for litigation in hundreds of other cases and in no way specifically addressed the issues involved in this case. No "report" was more than a paragraph.

Plaintiff's Opposition Brief at 7. Plaintiff moved to strike five of the expert reports. In a Letter Opinion of May 25, 1983, Magistrate Hammill concluded that

> the "reports" of these physicians ... *do not* give the substance of the facts and opinions to which each expert is expected to testify as required by [Fed.R.Civ.P. 26(b)(4)]. [emphasis in original].

Moreover, Magistrate Hammill concluded that the experts were not retained in anticipation of the present litigation, but for other trials. This court will quote Magistrate Hammill's Order at length in order to convey the substance and tone that he found was appropriate on the issue of expert witnesses:

> It is clear to the court and admitted by defense counsel that the above five physicians have been retained by A.H. Robins not in anticipation of the above litigation pending in this court but rather for other cases. The court is troubled by the fact that only after orders compelling defendant to generate experts reports were the above five physicians names given to counsel for plaintiff and the "reports" of these physicians given to counsel for plaintiff *do not* give the substance of the facts and opinions to which each expert is expected to testify as required by the Federal Rules of Civil Procedure and they certainly do not present the facts or data in this case upon which these experts base their opinions as envisaged by Federal Rule of Evidence 703. Further, as a practical matter, the defense tenders to counsel for plaintiff five individuals drawn from a Multi-District Litigation as experts who may or may not testify in this case and invites counsel for plaintiff, at a rather distant point in the development of this case, to engage in the time consuming and expensive process of attempting to depose these witnesses who are, for the most part, outside the District of New Jersey. Further, some of these witnesses indicate they may "also review plaintiff's medical records" and if this were to be done, it appears that the defense would not even be giving counsel for plaintiff a clue as to the facts, inferences and opinions which these experts might draw from a review of these records. Thus, counsel for plaintiff would be precluded from having any meaningful pre-trial discovery as to the opinions of these experts with respect to the plaintiff in this case. The court cannot tolerate such a situation and the long history and practice of this court in compelling the exchange of experts' reports would clearly be flaunted by such a practice. Further, when one studies these reports against the reports of plaintiff which clearly state plaintiff's theory of the case and the underlying basis for that theory, the unfairness is apparent.

Accordingly, being mindful of the entire history of this litigation and having had numerous conferences with counsel about it, I resolve plaintiff's motion to bar the testimony of the five above named experts *by ordering that these five experts shall be barred from testifying at the time of trial unless they render specific reports consistent with Federal Rule of Civil Procedure 26(b)(4) <u>related to this case and the particular theories advanced by plaintiff in this action on or before July 15, 1983.</u>* If at that time such reports are not received by counsel for plaintiff, Doctors Berger, Keith, King, Strom and Zatuchni shall be barred from testifying at the time of trial. [emphasis in original].

### Defendant's motion in limine

██ The court finds that defendant, on its motion *in limine,* has continued the same pattern of providing generalized information not specifically relevant to the issues in this case and not complying with the directives of the court. Defendant filed its motion *in limine* on June 7, 1983. On June 16, 1983, this court dismissed the motion without prejudice, because the argumentative section exceeded the thirty-page limit mandated by Local Rule 27B. The court allowed defendant to resubmit the brief. The new brief is thirty-seven pages long. It is true that the section labeled "Argument" is precisely thirty pages, but in fact the other parts of the brief engage in discussion which would more properly be in the Argument section.

More importantly, the content of the brief shows that it is not responding to the issues raised by plaintiff in this case. For example, defendant argues, "The issue of radiopacity has no place in this case and can only cause unwarranted prejudice, confusion and delay." Plaintiff's Brief at 29.

Plaintiff has not relied on the issue of radiopacity and defendant's motion to exclude evidence on this point raises a question as to whether defendant is tailoring its submissions to the issues raised by plaintiff

Thoma. Defendant makes no references to individual exhibits of plaintiff.

Most importantly, the court will deny defendant's motion *in, limine* on the ground that it is submitted at such a late stage of the litigation. It would have been more appropriate to have raised these matters in the pre-trial discussions with the Magistrate. Magistrate Hammill diligently worked to prepare this case for trial and to limit the issues that would be presented to this court. Since it was defendant which impeded the ability of the Magistrate to prepare this case for trial, defendant is now estopped from raising these issues. If this court were to allow this motion *in limine* at such a late stage of litigation, after this case has been pending for over three years, it would mock the entire pre-trial process handled by the Magistrate.

The court will accordingly deny defendant's motion *in limine.*

### Plaintiff's motion to strike the motion in limine

Since the court will deny defendant's motion *in limine,* it does not need to reach the issue of whether it was a sham pleading pursuant to Fed.R.Civ.P. 11. The court did consider plaintiff's brief, construing it as an opposition brief to defendant's motion.

Accordingly, the court will dismiss plaintiff's motion as moot.

### Motion to admit attorneys pro hac vice

Defendant moves by its New Jersey counsel, James B. Moran, of the New Jersey law firm of Hoagland, Longo, Oropollo and Moran to admit the following individuals to participate *pro hac vice* in the trial of this case: Charles P. Goodell, Jr., William J. Cassidy, Jr., Franklin M. Tatum and Deborah Russell. Defendant argues that this case is

a particularly complex products liability action that encompasses numerous witnesses and thousands of documents. Because of the complexity of this case, Robins requests that these individuals, who have special expertise in trying Dalkon Shield cases, be permitted to assist Rob-

ins' New Jersey counsel in trial of this case.

Defendant's Motion at 1.

Plaintiff opposes the motion because it argues that defendant has continually impeded the proceedings. It claims that the source of the impediment is defendant's national counsel, the firm of McGuire, Woods and Battle. It cites a Florida Court of Appeals case, *A.H. Robins v. Devereaux*, 415 So.2d 30 (Fla.App.1982) which found that defendant's counsel "maneuver[ed] . . . to evade answering material interrogatories until the latest possible date." *Id.* at 32.

The court has carefully weighed these arguments and concludes that it will deny defendant's motion.

Pursuant to Rule 83, Fed.R.Civ.P.,[1] and 28 U.S.C. § 1654,[2] the district courts may promulgate local rules to manage and conduct their cases. The United States Supreme Court has held that valid local rules have the force of law. *Weil v. Neary*, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 (1929).

In accordance with this grant of authority, the United States District Court for the District of New Jersey has adopted Rule 4, which governs the admission of out-of-state attorneys. It provides in pertinent part:

Rule 4   ADMISSION OF ATTORNEYS

.     .     .     .     .

C. Any member in good standing of the bar of any court of the United States or of the highest court of any state who is not under suspension or disbarment by the bar of any court . . . may in the discretion of the court, on motion, be permitted to appear and participate in a particular case.

It is well-settled that courts have wide discretion in determining the admission of out-of-state attorneys *pro hac vice*. In *Sanders*

*v. Russell,* 401 F.2d 241, 245 (5th Cir.1968), the Fifth Circuit Court of Appeals stated that the

district courts have broad discretion in prescribing requirements for admission to practice before them in most cases, 28 U.S.C. § 1654, but their rules must "be consistent with Acts of Congress" 28 U.S.C. § 2071.

It explained that the reason for vesting this authority in the court is its

valid interest in regulating the qualifications and conduct of counsel . . . and their amenability to disciplinary proceedings.

*Id.* In *MacNeil v. Hearst Corp.,* 160 F.Supp. 157 (D.Del.1958), the District Court for the District of Delaware held that a court may bar out-of-state attorneys from practicing before it if they do not associate themselves with local counsel. In analyzing 28 U.S.C. § 1654, it stated that

the words of the statute, as accented by me [*supra* at footnote 2] had appeared in the original Judiciary Act of September 24, 1789 [citation omitted] and continued from that time. . . . It would seem that the accented language is clear recognition of that large measure of control the various courts have over the counsel permitted to manage and conduct causes before it.

*Id.* at 159.

While the decision to admit out-of-state counsel is in the sound discretion of the court, it may not be exercised arbitrarily. *See* Comment, The Local Rules of Civil Procedure in the Federal District Courts—A Survey, 1966 Duke L.J. 1011, 1014.

In the present case, where a party's out-of-state counsel has continually thwarted the progress of the litigation, it is appro-

---

1. Rule 83.   Rules by District Courts

    Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. . . .

2. 28 U.S.C. § 1654   Appearance personally or by counsel

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel *as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.* [emphasis added].

priate to deny the motion to admit them *pro hac vice*.

Defendant's national counsel, McGuire, Woods & Battle, must bear much of the responsibility for numerous submissions to the court which were prepared for Dalkon Shield litigation in other jurisdictions and other cases, and which were not suitable for the case at bar. The McGuire firm prepared the exhibit list which violated the May 25 Order of Magistrate Hammill. Affidavit of James B. Moran, defendant's New Jersey counsel, at 4 (October 17, 1983). The McGuire firm prepared the motion *in limine* filed in June, 1983, which violated Local Rule 27B. Moran Affidavit at 7. All out-of-state counsel seeking admission are either lawyers in the McGuire firm or under their indirect control since the McGuire firm is defendant's national counsel. The motion will therefore be denied as to all out-of-state counsel.[3]

In so doing, the court finds that defendant will not be prejudiced. New Jersey counsel is abundantly familiar with the issues and the client as it is representing A.H. Robins in approximately seventy Dalkon Shield cases in New Jersey, of which thirty-nine have already been settled. This particular case has been pending for over three years. Furthermore, the court will give New Jersey counsel additional time to prepare its case, and will also schedule a new final pre-trial conference before the Magistrate.

*Conclusion*

Defendant's motion *in limine* will be denied. Defendant's motion to admit out-of-state counsel *pro hac vice* will be denied. Plaintiff's motion to strike defendant's motion *in limine* as a sham pleading will be dismissed as moot.

An order incorporating the foregoing shall be entered.

---

**3.** Motions to admit out-of-state counsel who are significantly involved in the litigation should be made at an early date so that the court may exercise control over out-of-state counsel. Had that been done, the court could

## ON MOTION FOR RECONSIDERATION AND REARGUMENT

Presently before the court is a motion by defendant A.H. Robins for reconsideration and reargument of an order filed by this court on November 2, 1983, 100 F.R.D. 344 (1983), denying admission of out-of-state attorneys *pro hac vice*. For the reasons which follow, defendant's motion will be denied.

Defendant moves for reconsideration on two grounds.

First, defendant argues the court misapprehended the relevant facts, such as the expertise needed to defend this action, the circumstances surrounding defendant's submission of exhibit lists and experts' reports that Magistrate James F. Hammill found were generalized and inapplicable to the present action, the control of out-of-state counsel by defendant's national coordinating counsel, McGuire, Woods & Battle (the McGuire firm), and the lack of prejudice to plaintiff.

Second, defendant argues the court misapplied the law, which defendant argues provides a court with only limited discretion to deny motions to admit out-of-state counsel *pro hac vice*. Defendant further argues that

> under the facts of this litigation, its right to counsel of its choice is constitutionally protected under the due process clause of the Fifth Amendment and First Amendment.

Defendant's Brief in Support of its Motion for Reconsideration at 21.

The court has reviewed defendant's brief and supporting affidavits and finds no new facts or explanation of previously known facts that warrant reconsideration of the court's order of November 2, 1983. For example, defendant disputes several findings and orders of Magistrate Hammill, upon which this court relied in part for its order of November 2, 1983. Defendant has

have ensured meaningful discovery, since a court may only control attorneys admitted to practice before it. *Gray v. Brunetti Construction Co.,* 266 F.2d 809 (3rd Cir.1959).

not presented evidence that would lead this court to conclude that Magistrate Hammill was in error. If defendant believed the Magistrate's earlier orders were erroneous, it could have moved for reconsideration or appealed to this court. It did not do so.

Defendant has presented no controlling case law decisions that would warrant this court to reconsider its order of November 2, 1983. Although defendant argues that its right to choose out-of-state counsel is constitutionally protected in the present case, it has presented no cases that support this proposition. On the contrary, the Supreme Court of New Jersey has held that there is no constitutional right on the part of a client to select an attorney who is not a member of the Bar of New Jersey. *State v. Kavanaugh,* 52 N.J. 7, 243 A.2d 225 (1968). Accordingly, a New Jersey state court has rejected a party's contention that "admission is mandatory, absent good cause for its denial." *Burlington County Internal Medical Associates v. American Medicorp, Inc.,* 168 N.J.Super. 382, 384, 403 A.2d 43 (Ch. Div.1979).

The court has carefully considered the factors which would favor admission of out-of-state counsel—complexity of the issues in which out-of-state counsel specialize, a long held attorney-client relationship, lack of local counsel with the necessary expertise; existence of legal questions involving the law of the foreign jurisdiction and the need for extensive discovery proceedings in the foreign jurisdiction, *id.*—and concludes that, considering the history of this case, these factors are outweighed by the court's need to fairly and efficiently manage the litigation on its docket. As the court stated in its opinion of November 2, 1983 *supra* at 348–49:

> In the present case, where a party's out-of-state counsel has continually thwarted the progress of the litigation, it is appropriate to deny the motion to admit them *pro hac vice.*

Defendant misses the point when it argues that the national coordinating counsel, the McGuire firm, does not control the conduct in the courtroom of other out-of-state counsel, such as the members of the firms of Hogan & Hartson, and Semmes, Bowen & Semmes, who were denied admission *pro hac vice* in the court's order of November 2, 1983. The McGuire firm should not be allowed to do indirectly through other out-of-state counsel what it cannot do directly.

In denying defendant's motion for reconsideration, the court reiterates that defendant has not presented persuasive evidence that it will be prejudiced. In fact, in a parallel situation earlier this year, the same firm of Hoagland, Longo, Oropollo & Moran would have tried the Dalkon Shield case of *Grace Banach v. A.H. Robins Co.,* Docket No. 1–20070–80 and fifteen other cases consolidated with it after the Hon. Robert A. Longhi, Judge for the Superior Court of New Jersey, Law Division, Middlesex County, denied on January 27, 1983, defendant Robins' motion to admit out-of-state counsel *pro hac vice.*

Accordingly, defendant's motion for reconsideration will be denied. An order incorporating the foregoing shall be entered.