Matthew KOHLMAYER

v.

NATIONAL RAILROAD PASSENGER
CORPORATION

No. CIV. A. 99–5455 (NHP).

United States District Court,
D. New Jersey.

Dec. 20, 2000.

Gregory L. Nester, Marvin I. Barish
Law Offices, P.C., Camden, NJ, for Plain-
tiff.

John A. Bonventre, Landman, Corsi,
Ballaine & Ford, Newark, NJ, for Defen-
dants.

POLITAN, District Judge.

Dear Counsel:

This matter comes before the Court on
appeal from Magistrate Judge Ronald J.
Hedges Order' denying an application of
Marvin I. Barish, Esquire ("Mr.Barish")

for *pro hac vice* admission to this Court.[1] The Court heard oral argument on this matter on September 29, 2000. For the reasons articulated herein, Judge Hedges' Order of August 17, 2000 is **AFFIRMED**.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

Mr. Barish is seeking *pro hac vice* admission in this case as plaintiff's counsel. The plaintiff, Mr. Matthew Kohlmayer ("Mr.Kohlmayer") was allegedly injured in the scope of his employment at National Railroad Passenger Corporation, also known as Amtrak (hereinafter "Amtrak"). Mr. Kohlmayer brings this action under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, and the Railroad Safety Appliance Act, 45 U.S.C. § 1, *et seq. See* Compl. ¶¶ 1–8. Mr. Barish has represented plaintiffs in many cases instituted under these federal statutes, and in that regard is experienced in this area of the law.

Mr. Barish is a member in good standing of the Bar of the Supreme Court of Pennsylvania[2] and has previously been admitted *pro hac vice* in The United States District Court of New Jersey. But *pro hac vice* admission in this district has been denied to Mr. Barish at least once. In 1996 Judge John W. Bissell denied Mr. Barish's application to practice in this Court; such decision is discussed in greater detail below.

Mr. Barish's conduct in the past few years, while practicing in this Court and in courts of other jurisdictions, has often been uncivilized, and at times unprofessional. Amtrak has filed disciplinary proceedings against Mr. Barish in Pennsylvania as a result of questionable trial tactics in a case involving claims similar to the present claims. As far as this Court is aware, those proceedings are currently pending. No other disciplinary actions are pending against Mr. Barish, and to the Court's knowledge he has never been disciplined by Pennsylvania or any other state's Bar Association.

Judge Hedges denied Mr. Barish's *pro hac vice* application on the basis of Mr. Barish's past record, finding that his conduct falls below the expectations of the Court. *See Kohlmayer v. Nat'l R.R. Passenger Corp.,* 2000 WL 1276599 (August 17, 2000). Instances of the behavior in question are set forth in more detail throughout this opinion.

## DISCUSSION

The question before the Court today is whether an attorney who is a member in good standing of the bar of one state must be admitted to practice *pro hac vice* in the United States District Court of New Jersey where his past behavior has been uncivilized and unprofessional and has resulted in reprimands, mistrials and wasted judicial time.

In answering this question, the Court is led to the crossroads of ethics and civility. While the line between unethical and uncivilized behavior is often blurred, there is nevertheless a meaningful distinction. Where an attorney violates ethical duties, the Rules of Professional Responsibility apply and formal disciplinary proceedings may result. *See* L.Civ.R. 103.1, 104.1; *In re Corn Derivatives Antitrust Litig.,* 748

---

1. Where a magistrate judge decides a non-dispositive matter, meaning that the order does not dispose of a claim or defense of a party, upon appeal the district judge may modify or set aside such order only if it is "clearly erroneous or contrary to law." Fed. R.Civ.P. 72(a); 28 U.S.C. § 636. Thus, Judge Hedges' Order denying the *pro hac vice* admission of Mr. Barish will not be reversed unless the Court finds it clearly erroneous or contrary to law.

2. Mr. Barish is also admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Third, Fourth, and Ninth Circuits, the Eastern District of Pennsylvania, the Northern District of California, and the United States District Court of Maryland. *See* Nester Decl. ¶ 3.

F.2d 157, 160 (3d Cir.1984). General uncivilized or "unlawyerlylike" conduct may not constitute a technical violation of the ethical rules, but such conduct is a stain on the legal profession and often delays the judicial process.

Judge Bassler, in distinguishing civility and ethics, stated that "incivility" is "akin to pornography in that while it may be hard for us to define, we all know it when we see it." Bassler, J. *Lost Cause or Last Chance for Civility*, N.J. Law Journal, op. ed. at 23, July 10, 1995. Incivility has been defined by the Seventh Circuit Judicial Committee on Civility as "rudeness, hostility, abrasive conduct, and strident personal attacks on opponents." *See id.*

In recent years, instances of such uncivilized behavior have become commonplace, and most apparent in inter-attorney relations. Today, a kind word, a slap on the back of an adversary, or even the courtesy of a handshake has become so rare that it makes heads turn in courtrooms where this type of behavior occurs. It ought not be so.

Civility is basic and fundamental. It should not only govern one's everyday, personal life, it should govern one's professional life as well. Life is too short to be spent on making enemies. More importantly, our level of civility (or lack thereof) reflects upon ourselves. Civility is the measure of who we are—both to kings and to paupers. If we can accord to the pauper the same respect we might give a king, we have earned the title "civilian." Attorneys everywhere should strive to attain this coveted title.

The New Jersey Bar Association, in conjunction with the Deans of Rutgers School of Law -Newark, Rutgers School of Law–Camden, and Seton Hall Law School, created the Commission on Professionalism in the Law in response to the increase in uncivilized behavior among attorneys. *See* 51 Rutgers L.Rev. 889, 895 (1999). The primary goal of the commission is "to help improve the professional behavior and attitudes of lawyers and judges." Baisden,

Cheryl, "The New Jersey State Bar Association: the First 100 Years," N.J. Lawyer (October, 1999). This is an important goal for the legal profession, and one which may be furthered, at least in part, by this opinion.

## A. The Standard for Admission *Pro Hac Vice*

There is no uniform standard for *pro hac vice* admission in United States District Courts. District courts therefore mainly rely on state bar admission in determining whether to admit an attorney *pro hac vice. See In re Dreier*, 258 F.2d 68 (3d Cir.1958); 33 A.L.R. 799 (1977).

In this district, the local rule regarding *pro hac vice* admission states, in pertinent part, that:

> [a]ny member in good standing of the bar of any court of the United States or of the highest court of any state, who is not under suspension or disbarment by any court ... may **in the discretion of the Court**, on motion, be permitted to appear and participate in a particular case.

L.Civ.R. 101.1(c)(1)(emphasis added). Clearly the rule contemplates that Courts may deny admission *pro hac vice*, even though the applicant is not currently suspended or disbarred from the practice of law. The scope of discretion has been left to interpretation by the Courts.

It is well-settled that federal courts have wide discretion in granting admission to practice *pro hac vice. See Thoma v. A.H. Robins, Co.*, 100 F.R.D. 344, 348 (D.N.J.1983); *see also* 7 Am.Jur.2d, Attorney at Law, § 22 (1997). Such discretion cannot, however, be exercised arbitrarily. *See Thoma*, 100 F.R.D. at 348; *see also* Comment, The Local Rules of Civil Procedure in The Federal District Courts–A Survey, 1966 DUKE L.J. 1011, 1018.

The question here is whether it is proper for this Court to consider evidence of past inappropriate, uncivilized, and unpro-

fessional behavior by Mr. Barish in determining whether he should be permitted to practice before this Court.

■ Typically, a liberal approach is taken by federal courts in all jurisdictions in allowing out-of-state attorneys to practice in federal courts of jurisdictions where they are not admitted to the bar. The trend of leniently granting *pro hac vice* admission stems from the Supreme Court case of *Selling v. Radford*, which held that even where an attorney was no longer a member of a state bar, he was not automatically barred from appearing before the Supreme Court. 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917). Liberal admission is also commonly done as a matter of comity between states. *See Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717(1979); 33 A.L.R. 799 (1977). The practice of comity is not, however, mandated by the Constitution. *See id.*

Practices among the federal district courts in this country vary from state to state, but this district is not unlike most other districts in that motions for *pro hac vice* admission are granted almost as a matter of course.

## B. The Conduct in Question

The record in this case is replete with instances of grossly inappropriate, uncivilized, and unprofessional behavior by an attorney who seeks admission to practice before this Court. Mr. Barish has in recent years left a trail of mistrials in his wake.

In 1992 Mr. Barish engaged in inappropriate behavior and "questionable ethics" at trial, resulting in the grant of a new trial by the United States District Court for the Eastern District of Pennsylvania. *See Patchell v. Nat'l R.R. Passenger Corp.*, 1992 WL 799399 (E.D.Pa. July 31, 1992). After the court issued its memorandum opinion detailing the bases for its decision, the parties settled the case, and the court vacated its opinion because of the settlement. The Third Circuit reversed the trial court's decision to vacate its opinion, and the opinion was reinstated. *See Patchell v. National R.R. Passenger Corp.*, 107 F.3d 7 (3d Cir.1997).

Mr. Barish argues here that Judge Hedges should not have relied on the district court's opinion, which details the inappropriate behavior of Mr. Barish at trial, since the opinion was reinstated because of a reversal based on a procedural fault of the district court. *See* Pl. Br. at 6. This Court disagrees. It was proper for Judge Hedges to rely on the opinion as it contained insight into Mr. Barish's prior behavior and character.

In an unpublished opinion, Judge Simandle of this Court granted a motion for a new trial by defendants, after the plaintiff won a jury verdict, on the basis of Mr. Barish's grossly uncivilized behavior at trial. *See* Bonventre Decl., Ex. C; *McEnrue v. N.J. Transit Rail Ops.*, Civil Action No. 90–4728, at 17–27 (Sept. 30, 1993). The trial court took into consideration verbal attacks wherein Mr. Barish admittedly cursed at his adversary on the record, but later apologized for those outbursts. The trial court took a "wait-and-see" attitude and continued the trial, which ultimately concluded without mistrial.

Judge Simandle found that the trial court made a mistake by so doing, noting that Mr. Barish repeatedly suggested to the jury in his closing argument that they return a "large" verdict and referred to "millions" of dollars. Judge Simandle felt that Mr. Barish overstepped his bounds with these references by implicitly suggesting to the jury a damages award. *McEnrue*, 90–4728 at 26. Judge Simandle concluded that the "facts of Mr. Barish's misconduct, and his utterly belligerent conduct toward opposing counsel, when added together, justified ending the case by mistrial." *See id.*

At oral argument before this Court, Mr. Barish stated that Judge Hedges mischaracterized these opinions, and that he "never knew saying something in a closing speech ... was worthy of [his] not being

able to practice in this court." Tr. of Oral Argument, 9/29/00, p. 7, lines 15–18. It so happens that what Mr. Barish chose to say in that closing speech, as in others he has made, was highly improper, thereby making it "worthy" of a mistrial. If Mr. Barish chooses to act in an uncivilized, possibly unethical manner, he should expect negative repercussions such as this.

In 1995, a jury verdict in favor of Mr. Barish's client was *sua sponte* set aside and a new trial was granted because of Mr. Barish's conduct at trial. *See Spruill v. Nat'l R.R. Passenger Corp.*, 1995 WL 534273, *9 (E.D.Pa.1995). Judge Shapiro based her ruling, in part, on Mr. Barish's improper opening statement, his egregious leading of a witness, his attempt to coach the plaintiff during cross-examination by the defendants, and his troubling demeanor, including attempts to address the jury while in sidebar. Judge Shapiro concluded as follows:

> We have noted in reviewing the caselaw that this is not the first time the improper conduct of plaintiff's counsel has been the subject of judicial criticism, sufficient to set aside a verdict in favor of his client. Here, approximately two years after the complaint was filed, this case unfortunately remains unresolved. This is unfair to both parties who should have a resolution of the underlying issues; it may be especially unfair to plaintiff who has been injured and may have a meritorious claim against Amtrak. We are in a situation because of the conduct of plaintiff's counsel; not only do both parties suffer, but the administration of justice suffers when judicial resources are caused to be wasted.

*Id.* at *9.

Mr. Barish argues that Judge Hedges' reliance on *Spruill* was misplaced. He contends that none of the fourteen reasons explicitly listed by Judge Shapiro for setting aside the verdict rose to the level of a debarable offense, and therefore the grant of a new trial was erroneous. He further argues that Judge Hedges should not have

relied on the case in denying *pro hac vice* admission. All fourteen bases listed by Judge Shapiro related to Mr. Barish's conduct at trial. This opinion provided further insight to Judge Hedges, as it does to this Court, of Mr. Barish's character, professional habits, and lack of civility. As such, it was properly considered by Judge Hedges.

Mr. Barish contends that Judge Hedges also erroneously relied on a prior denial of *pro hac vice* by Judge Bissell of this Court, conclusively stating that Judge Bissell's ruling was clearly erroneous. *See Natusch v. Consolidated Rail Corp.*, Civil Action No. 94–2635 (D.N.J.1996). In *Natusch*, Judge Bissell, relying in part on Judge Simandle's 1993 ruling, recognized that there was "peril on the seas in front of [the Court] based upon the past conduct of [Mr. Barish]," and found that it was thus proper to deny admission. Judge Bissell further commented that Mr. Barish should consider the denial of *pro hac vice* admission a warning, that he should improve his behavior or risk not practicing in this Court in the future.

Mr. Barish further contends that he chose not to appeal the ruling because "it was a one time matter and the case was settled." *Id.* at 9. This Court is not persuaded by the argument that Judge Bissell's ruling was clearly erroneous just because Mr. Barish claims it to be so.

It appears to the Court that Mr. Barish's antics have not subsided. Recently, Mr. Barish was involved in yet another case resulting in a mistrial. *See Comuso v. Nat'l R.R. Passenger Corp. a/k/a Amtrak*, No. 97–7891, 2000 WL 502707 (E.D.Pa. April, 26, 2000). In this case, the mistrial was granted because Mr. Barish threatened to "kill" opposing counsel. *See id.* at *1. Mr. Barish later admitted calling his adversary a "fat pig" "[f]our times" in that same outburst. *See* Defendant's Letter to the Court dated October 2, 2000, Ex. E. This conduct epitomizes the declined state of civility in inter-attorney relations.

Mr. Barish admits that his conduct in trying the *Cumuso* case was "volatile" at times, but he blames opposing counsel for taunting him, forcing him to behave in an ill manner. *See* Pl. Br. at 8. The Defendant in *Cumuso*, also the defendant in the present case, instituted disciplinary proceedings against Mr. Barish as a result of his behavior. *See* Pl. Reply Br., Ex. A. A letter from the Pennsylvania Disciplinary Board to the Clerk of the Eastern District of Pennsylvania was submitted as an exhibit to this Court. The letter did not describe the nature of the proceedings against Mr. Barish, but instead instructed all parties involved to keep any information regarding the disciplinary proceeding strictly confidential. As far as this Court is aware, those proceedings are still pending.

Mr. Barish argues that this Court has no ability to deny *pro hac vice* admission if the attorney is a member in good standing of the bar of the Supreme Court of a state. *See* Pl. Br. at 1. Mr. Barish cites an Eleventh Circuit case which states that admission to a state bar creates a presumption of good moral character that cannot be overcome by the "whims of the district court." *Schlumberger Technologies, Inc. v. Wiley*, 113 F.3d 1553, 1559 (11th Cir. 1997).[3] The Court does not disagree with this premise, however, the record in this matter is more than sufficient to overcome (in a far from whimsical manner) the presumption of Mr. Barish's good moral character.

■ The question here is whether the hands of this Court are tied, such that it must admit Mr. Barish *pro hac vice* and then hold its breath for the duration of trial in hopes that a mistrial will not result. In answering this *pro hac vice* question, this Court retains broad discretion. *See In re Dreier*, 258 F.2d at 70; *Mruz v.*

3. *Schlumberger* relied on an older Fifth Circuit case called *In re Evans*, 524 F.2d 1004 (5th Cir.1975), in opining that *pro hac vice* admission should not be denied "absent a showing of unethical conduct rising to a level that would justify disbarment." *Id.* at 1561.

*Caring*, 107 F.Supp.2d 596 (D.N.J.2000); *Thoma*, 100 F.R.D. at 348; *accord In re G.L.S.*, 745 F.2d 856 (4th Cir.1984)(denying *pro hac vice* admission of an attorney because the Court was not satisfied with the "private or professional character" of the attorney).

In *Thoma*, an out-of-state attorney "continually thwarted the progress of litigation," and denial of *pro hac vice* status on that basis was proper. Although *Thoma* involved an attorney's behavior in the actual case at bar, unlike here (where Mr. Barish's conduct has thwarted the progress of numerous other litigations), the concept is applicable. When forewarned with a substantial amount of evidence that an attorney is likely to hinder the litigation process, a court should not and cannot be forced to grant a *pro hac vice* application of that attorney.

In *In re Dreier*, the attorney seeking *pro hac vice* admission had been disbarred after he was convicted on criminal charges, but was reinstated to the bar of Pennsylvania at the time of his *pro hac vice* application. 258 F.2d 68–69. The Court nevertheless instructed the district court to grant Mr. Dreier's application, stating:

> Certainly an erring lawyer who has been disciplined and who having paid the penalty has given satisfactory evidence of repentance and has been rehabilitated and restored to his place at the bar by the court which knows him best ought not to have entered against him by a federal court solely on the basis of an earlier criminal record and without regard to his subsequent rehabilitation and present good character.

*Id.* at 69–70 (*citing Schware v. Board of Bar Examiners*, 353 U.S. 232, 246–47, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957)).

This Court disagrees with that standard. This Court can, and must, consider the character of an applicant and his or her record of civility when determining whether to grant *pro hac vice* status. *See* L.Civ.R. 101.1(c)(1).

 *In re Dreier* stands for the proposition that the mere fact of prior disbarment does not *ipso facto* disqualify an attorney from admission *pro hac vice* in courts of this district. It does not stand for the proposition that admission to the bar is sufficient for admission *pro hac vice.* In fact, the Third Circuit emphasized that a *pro hac vice* applicant who is a member in good standing of an out-of-state bar should not be admitted if the court finds that "the [applicant] is **not presently of good moral or professional character."** *Id.* at 70 (emphasis added). Thus, in determining whether an attorney is suitable for admission *pro hac vice* at the time of his or her application, a court has discretion to deny an application regardless of past or present disciplinary actions and regardless of present "good standing" status in the bar of his or her home state.

This Court does not desire or propose a broad standard whereby hearings, for example, on *pro hac vice* applications might often be necessitated. There must, however, be some point, some line at which an attorney's repeated, documented, instances of uncivilized behavior, whether or not rising to the level of a disbarable offense, strips him of the privilege of *pro hac vice* admission.

The Court finds that Mr. Barish's conduct, as detailed in this opinion, has reached that point. Mr. Barish has been warned by numerous judges that if he continues his uncivilized behavior, he will no longer be permitted to practice in this Court. Because Mr. Barish has blatantly failed to heed these warnings, he will not be permitted to appear *pro hac vice* in this case.

In his 1995 article, Judge Bassler stressed that uncivil behavior by attorneys yields social costs. *See* Bassler, J., *supra,* at 23. Time spent dealing with peripheral matters as a result of uncivilized behavior is time simply wasted by courts. *See id.* The Northern District of Texas has addressed this matter as well:

> With alarming frequency, we find that valuable judicial and attorney time is consumed in resolving unnecessary contention and sharp practices between lawyers. Judges and magistrates of this court are required to devote substantial attention to refereeing abusive litigation tactics that range from benign incivility to outright obstruction.

*Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n,* 121 F.R.D. 284 (N.D.Tex. 1988). Judge Bassler posed the question: "what can we do about it," and answered "not much." This Court finds today that there are some instances in which courts can do something about it. Courts can use their discretion to deny the privilege of *pro hac vice* admission to attorneys who consistently act in an uncivilized manner, regardless of whether formal ethical complaints have been made against the *pro hac vice* applicant.[4]

Where a court is made aware of a pattern of uncivilized behavior by an attorney, bordering on the unethical, which has resulted in the waste of judicial time in the past, it must have discretion to deny the otherwise leniently granted *pro hac vice* applications in the interest of judicial economy.

 There are two further issues to be addressed by this Court. First, the plaintiff's interest in having Mr. Barish represent him in this matter has not been overlooked. While this is an important consideration, it does not rise to the level of a criminal defendant's constitutional right to have the counsel of his choice. *See Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 170 (2d Cir.1966); *but see Leis v. Flynt,* 439 U.S. 438, 441–42, n. 4, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979).[5]

---

**4.** The Court renders no opinion on the quantity of uncivilized conduct required before an attorney is said to have a pattern of unacceptable behavior. Instead, this determination should be made by courts on a case-by-case basis. *See Leis,* 439 U.S. at 443, 99 S.Ct. 698.

**5.** Notably, *Spanos v. Skouras* is not a case about *pro hac vice* admission per se. An out-

*Spanos* has been criticized, perhaps even rejected, by the Supreme Court insofar as it found that a client had a "constitutional right" under the privileges and immunities clause to the counsel of his choice. *See Leis,* 439 U.S. at 441–42, n. 4, 99 S.Ct. 698 *(citing Norfolk & Western R. Co. v. Beatty,* 423 U.S. 1009, 96 S.Ct. 439, 46 L.Ed.2d 381 (1975)).

Second, the Court is cognizant of Mr. Barish's interest in practicing his profession. *See In the Matter of Abrams,* 521 F.2d 1094, 1099 (3d Cir.1975)(*quoting Ex parte Burr,* 22 U.S. 529, 9 Wheat. 529, 6 L.Ed. 152 (1824)). Nearly two hundred years ago, the Supreme Court emphasized attorneys' interest in practicing their profession, but stressed that it is nevertheless "extremely desirable that the respectability of the bar should be maintained." *Ex parte Burr,* 22 U.S. at 529–30, 9 Wheat. 529. This desire has not ceased.

■ The right to practice law in courts of jurisdictions in which an attorney is not admitted to the bar is not a right protected by the due process clause of the Fourteenth Amendment. *See Leis v. Flynt,* 439 U.S. 438, 441–42, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). The *Leis* Court approved instead of a case-by-case determination of *pro hac vice* admission, where federal courts maintain discretion in admitting the attorneys who will practice before them. *See id.* at 443, 99 S.Ct. 698. The Court stressed that while liberal admission may be proper, it is "not a right granted by statute or the Constitution." *Id.*

Having given due consideration to the interests of the plaintiff in having the counsel of his choice, and Mr. Barish's interest in practicing before this Court, the Court adheres to its finding that the interest in maintaining the "highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice" would be undermined if Mr. Barish were admitted to practice before this Court. *Howell,* 936 F.Supp. at 773.

Judge Hedges' Order denying the admission of Mr. Barish *pro hac vice* was not clearly erroneous or contrary to law, and accordingly is affirmed.

### CONCLUSION

Based on the foregoing reasons, the Order of Judge Hedges on August 17, 2000 denying Mr. Barish's application for admission *pro hac vice* is hereby **AFFIRMED**.

---

of-state attorney was never admitted *pro hac vice* because he never appeared before the Court where the case was tried, the Southern District of New York. After trial, the attorney brought suit against his client for fees. The client defended on the grounds that the attorney had engaged in the unauthorized practice of law because he was never admitted *pro hac vice.*

The Second Circuit stressed that the attorney would have been admitted *pro hac vice* had a proper motion been made, as the attorney was a member in good standing of the California bar and had never conducted himself in an "unlawyerlylike" fashion (unlike Mr. Barish). *Id.* at 168. The Second Circuit found that where the client had exercised his right to counsel of his choice, he could not then escape payment of compensation for services rendered.