James JACOB, Appellant,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION.**

No. 02–1931.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 4, 2003.

Decided March 26, 2003.

Before ROTH, BARRY, and
FUENTES, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Plaintiff, James Jacob ("Jacob"), sued
his employer, the National Railroad Pas-
senger Corporation ("Amtrak"), alleging
that on April 27, 1997 he injured his back
and his shoulder in the course of his em-
ployment as a mechanic foreman. Amtrak
conceded that it was negligent and a jury
trial was held on the issues of causation
and damages. The jury found that Am-
trak's negligence was not the proximate
cause of Jacob's injuries. He has appeal-
ed, arguing that the District Court abused
its discretion when it (1) denied his attor-
ney's application for admission *pro hac
vice*, (2) amended the pre-trial order to
permit Amtrak to show surveillance tapes
of him to the jury, and (3) denied his
motion for judgment as a matter of law on
the issue of causation. The District Court
had subject matter jurisdiction under 28
U.S.C. § 1331 and we have appellate juris-
diction pursuant to 28 U.S.C. § 1291. We
will affirm.

■ The first issue raised by Jacob is
whether the District Court abused its dis-
cretion when it denied his application to
admit attorney Marvin I. Barish *pro hac
vice*. The District of New Jersey's Local
Rules invest the district courts with the
discretion to determine whether or not to
admit counsel *pro hac vice*. *See* D.N.J. L.
Civ. R. 101.1(c)(1). The District Court
based its decision on the fact that Barish
"has on numerous occasions attacked his
adversaries verbally as well as physically,"
as well as the fact that he has "evidenced a
disregard for the court rules." A. 4–5. In
addition, the Court relied on the reasons
given in *Kohlmayer v. Nat'l R.R. Passen-
ger Corp.*, 124 F.Supp.2d 877, 878 (D.N.J.
2000), in which Barish's application for *pro
hac vice* admission was denied because
"his past behavior has been uncivilized and
unprofessional and has resulted in repri-
mands, mistrials and wasted judicial time."

It is not disputed that Barish's behavior
has interrupted and delayed the orderly

progression of cases before numerous courts in this circuit. His comments and conduct have caused mistrials and have forced courts to overturn jury verdicts. *See, e.g., Comuso v. Nat'l R.R. Passenger Corp.*, No. 97–7891, 2000 WL 502707, at *1–2 (E.D.Pa. Apr. 26, 2000)(finding that case ended in a mistrial as a result of Barish's behavior which included threatening to kill opposing counsel during a recess, physical intimidation of opposing counsel and profane outbursts); *Spruill v. Nat'l R.R. Passenger Corp.*, No. 93–4706, 1995 WL 534273, at *1–3 (E.D.Pa. Sept. 5, 1995) (setting aside $3,838,791.00 plaintiff's verdict and ordering new trial based on Barish's "comments and conduct," which included egregious leading of witnesses, coaching his client during cross-examination and attempting to address the jury during a sidebar conference); *Patchell v. Nat'l R.R. Passenger Corp.*, No. 90–4745, 1992 WL 799399, at *3–6 (E.D.Pa. July 31, 1992)(setting aside $700,000.00 plaintiff's verdict and ordering new trial in part because of Barish's "inflammatory and prejudicial" remarks). In light of this record, the District Court acted well within its discretion when it denied Barish the privilege of admission *pro hac vice*.

■ The second issue raised by Jacob is whether the District Court abused its discretion when it permitted an amendment to the final pretrial order to enable Amtrak to show surveillance tapes of him. *See Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir.1994)(holding that decision to allow use of witnesses or exhibits not previously identified is reviewed under an abuse of discretion standard). Final pretrial orders may only be modified "to prevent manifest injustice." Fed. R.Civ.P. 16(e). Four criteria guide courts in deciding whether or not to modify a final pretrial order: "(1) the prejudice or surprise in fact to the opposing party, (2)

the ability of the party to cure the prejudice, (3) the extent of disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-compliance." *Greate Bay Hotel & Casino*, 34 F.3d at 1236.

In this case, the surveillance tapes were not listed in the pre-trial order because Amtrak did not intend to play them. Defense counsel confirmed this in a telephone conversation with Jacob's counsel the week before trial. In reliance on defense counsel's representation, Jacob's counsel read into the record an interrogatory and response in which Amtrak acknowledged that it had taped Jacob. Defense counsel then requested and was granted permission to play certain of the tapes to enable Amtrak to refute the inference that they were detrimental to its case.

By reading the interrogatory and response into the record, Jacob's counsel concededly invited the jury to infer that the tapes were detrimental to Amtrak. The District Court, concerned about "gamesmanship" on both sides, determined that the jury should see the tapes and decide the tapes' significance for themselves. The Court concluded that in the "totality of the circumstances it's more important for the jury to be given all the facts of [Jacob's] condition," because that would enable the jury to get "at the truth of the matter." A. at 9.2–9.4.

The District Court acknowledged that Jacob was surprised by Amtrak's request to play certain tapes and that playing the tapes would prejudice Jacob to "some" extent. A. 9.2. On the other hand, the Court noted that Jacob's counsel had done nothing more than read the interrogatory and response into the record; he had not yet made any argument regarding what inferences the jury should draw from the fact that Amtrak chose not to play the tapes. The Court took steps to minimize

any prejudice to Jacob by giving him time to view all of the tapes and by permitting him to depose the investigators who made the tapes, at Amtrak's expense. The Court also permitted him to play for the jury whatever tapes or portions of tapes supported his case. Indeed, he played five days of surveillance for the jury which showed that he was not very mobile while Amtrak played but one, which showed that he was. And, importantly, although Jacob was only seen and taped on thirteen occasions, he was able to elicit testimony that Amtrak was billed $101,253.70 for 1,578 man hours of surveillance.

Turning to the third criterion, granting Amtrak's request to play the tapes did extend the trial, but not for long. And, finally, the District Court found that defense counsel did not act in bad faith in failing to list the tapes or the investigators who made them in the final pretrial order. In sum, the District Court did not abuse its discretion in permitting the amendment to the final pretrial order.

■ The third issue raised by Jacob is whether the District Court erred in not granting his motion for judgment as a matter of law. At the close of all the evidence, Jacob moved for judgment as a matter of law, arguing that no evidence had been presented which would support a finding that his injuries were caused by anything other than Amtrak's negligence. The District Court reserved decision. Because Jacob failed to renew his motion within ten days of the entry of final judgment, as is required by Federal Rule of Civil Procedure 50, he waived his claim for judgment as a matter of law. *See* Fed. R.Civ.P. 50(b); *Williams v. Guzzardi,* 875 F.2d 46, 50 n. 6 (3d Cir.1989).

■ In his reply brief, Jacob argues that even if he waived his claim for judgment as a matter of law, we should nonetheless review his sufficiency of the evidence argument and, if we find that there was insufficient evidence to support the jury's verdict, grant a new trial. *Id.* (holding that defendants' failure to renew their motion for judgment as a matter of law, which was denied by the District Court when they made it at the close of the evidence, limited the relief the appellate court could grant to a new trial). *But cf. Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 364 (3d Cir.1999)(holding that a party who fails to comply with Rule 50 by moving for judgment as a matter of law at the close of all the evidence wholly waives the right to mount any post-trial attack on the sufficiency of the evidence). Even assuming that Jacob has not waived his claim for a new trial, an assumption we make with no great confidence, his claim must be rejected. Jacob testified at trial that his shoulder was injured in the accident at issue. There was no other proof of the cause of the injury to his shoulder, as there were no known witnesses to his accident. Because the jury was entitled to disbelieve his testimony, its determination that Amtrak's negligence was not the proximate cause of any injury he sustained will be upheld.

The judgment of the District Court will be affirmed.