IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
December 20, 2021 11:49 AM
ST-2020-CV-00181
**TAMARA CHARLES**
**CLERK OF THE COURT**



# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS/ ST. JOHN

|  |  |  |
|---|---|---|
| WILLIAM DUGGER and SUSAN PITTEL, | ) ) | |
| Plaintiffs, | ) ) | CASE NO. ST-20-CV-181 |
| v. | ) ) ) | ACTION FOR BREACH OF CONTRACT, SPECIFIC PERFORMANCE, AND |
| NISHA JONES, | ) ) ) | DECLARATORY JUDGMENT |
| Defendant. | ) ) | JURY TRIAL DEMANDED |
| NISHA JONES, | ) ) ) | |
| Counterclaim Plaintiff, | ) ) | CASE NO. ST-20-CV-181 |
| v. | ) ) ) | ACTION FOR BREACH OF CONTRACT |
| WILLIAM DUGGER and SUSAN PITTEL, | ) ) ) | Cite as 2021 VI Super 120U |
| Counterclaim Defendants. | ) ) ) | |

**MICHAEL L. SHEESLEY, Esq.**
Michael L. Sheesley, P.C.
P.O Box 307728
St. Thomas, Virgin Islands 00803
*Attorneys for Plaintiffs/ Counter Defendants*

**DANIEL L. CEVALLOS, Esq.[1]**
Cevallos & Wong LLP
61 Broadway, Suite 2220
New York, New York 10006
*Attorneys for Michael Sheesley*

**TEE PERSAD, Esq.**
CPLS, P.A.
201 E. Pine Street, Suite 445
Orlando, Florida 32801
*Attorneys for Defendant/ Counter Plaintiff*

**JALICHA PERSAD, Esq.**
CPLS, P.A.
201 E. Pine Street, 32801
Orlando, Florida 32801
*Attorneys for Defendant/ Counter Plaintiff*

**CARTY, RENÉE GUMBS,** Judge

---

[1] Attorney Cevallos appeared for the limited purpose of oral argument on behalf of Attorney Sheesley.

## MEMORANDUM OPINION

¶1.     **BEFORE THE COURT** are Plaintiffs'/Counter Defendants', William Dugger and Susan Pittel (Plaintiffs), "Motion for Sanctions Related to the Deposition of Brice McLaughlin and Ethical Violations by Attorney Tee Persad" filed on November 6, 2020. Defendant/Counter Plaintiff, Nisha Jones ("Defendant" or "Jones"), filed her opposition to Plaintiffs' motion for sanctions on December 1, 2020. On February 4, 2021, Plaintiffs filed their "Motion for Evidentiary Hearing on Motion for Sanctions, Including Disqualification." On February 15, 2021, Defendant Jones filed her "Motions for Sanctions Against Attorney Michael Sheesley," and on March 1, 2021, Plaintiffs filed an opposition to Defendant's motion. On the same day, Defendant filed her opposition to Plaintiffs' motion for an evidentiary hearing. The Court granted Plaintiffs' request for an evidentiary hearing and conducted the hearing on March 15, 2021, and concluded on March 19, 2021. For the following reasons, the Court will deny both motions for sanctions.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     On January 12, 2020, Defendant Jones entered a contract with Plaintiffs Dugger and Pittel to purchase residential property located at 1A-9-11 Estate Dorothea. The original contract price for the property was $815,000 and the Defendant provided an earnest money deposit of $81,500 to the Plaintiffs. The contract provided Jones thirty (30) days to obtain financing for the property. Jones, a veteran of the U.S. Army, applied for a loan from the United States Department of Veteran Affairs through the lending institution First Liberty Mortgage Company, LLC ("First Liberty"). Mr. Brice McLaughlin ("McLaughlin"), a broker with First Liberty, was Jones' mortgage broker who assisted her throughout the appraisal and application process to obtain the loan. The first appraisal came in above the purchase price at $838,000; however, the appraisal had several inaccuracies, such as stating

2

the property had a pool when it does not and indicating that the property was 1,459 square feet more than its actual size. Accordingly, Jones requested the property be appraised again and the modified appraisal came back with a lower value of $783,000. Due to the lower appraisal value, Jones refused to pay the agreed upon price of $815,000. Subsequently, further negotiations ensued, and Dugger and Pittel offered to lower the purchase price to $785,000. Jones countered with an offer of $725,000.

¶3.    On April 7, 2020, the Plaintiffs filed for breach of contract, arguing that the Defendant always intended to question the appraisal process with the expectation to have the agreed upon purchase price lowered. Conversely, Defendant argues that since the appraisal value was $783,000, she could not obtain a loan for the $815,000 purchase price, therefore she is not in breach of the contract. Defendant Jones further argues that she did not renege on the contract, therefore she is entitled to have her earnest money deposit returned in full.[2]

¶4.    At issue is the first deposition (and the only deposition that has taken place to date) which was held on October 15, 2020, with the Defendant's mortgage broker, Mr. McLaughlin. McLaughlin's deposition was critical for both parties as he had first-hand knowledge of the appraisal value and Defendant's attempts to obtain financing. Due to the Coronavirus (SARS-CoV-2) global pandemic, the deponent, court reporter, and lawyers were in three (3) different jurisdictions, thus McLaughlin's deposition was conducted remotely via the Zoom platform.[3]

¶5.    The basis for the motions for sanctions and disqualification are the direct result of the discourse between both counsel during and after the deposition. Defendant's counsel, Attorney Persad accused Attorney Sheesley of using racist words, tone, and conduct and continuously objected

---

[2] Plaintiffs stated they were able to sell the property on June 22, 2020, for less than the modified appraisal amount of $783,000, and incurred other closing costs.

[3] *See* Supreme Court of the Virgin Islands Administrative Order 2020-0015, at 5-6 (August 14, 2020).

3

throughout Attorney Sheesley's direct examination of McLaughlin. Despite Attorney Persad's accusations, Attorney Sheesley continued with the deposition in an effort to elicit evidence on behalf of his clients. During the defense's cross examination of McLaughlin, the less than collegial conduct between both counsel continued and although the deposition continued, it was never completed.

¶6.     Three days later on October 18, 2020, Attorney Persad sent an email to both Attorney Sheesley and McLaughlin regarding their conduct at the deposition. On October 20, 2020, McLaughlin sought guidance by unilaterally reaching out to the Court to call for intervention and to force decorum between both counsel. The elevated disagreement between both counsel during the deposition culminated in both attorneys filing motions for sanctions against each other.

¶7.     Attorney Sheesley's motion for sanctions requested Attorney Persad and his firm be sanctioned and disqualified from this matter for frustrating the deposition of McLaughlin and for engaging in *ex parte* communications with McLaughlin via email after the deposition. Following this, Attorney Persad filed a motion for sanctions against Attorney Sheesley regarding the same dispute, but also accused Sheesley of racial microaggressions. The respective oppositions and replies followed. After the two-day evidentiary hearing, this Court is faced with the arduous task of parsing out each statement made to opposing counsel throughout this case thus far to determine whether sanctions and disqualification are appropriate.

## STANDARDS OF REVIEW
### I.     Disqualification.

¶8.     The Court has inherent power to supervise the conduct of attorneys that appear before it, and subsequently, to disqualify any attorney if warranted. *See Farrell v. Hess Oil Virgin Islands*, 2012 WL 3536799 *2 (V.I. Super. Ct. 2012). The Court has discretion to determine when an attorney should be disqualified. *Id.* The party seeking disqualification carries the "heavy burden" and "must

meet a high standard of proof before a lawyer is disqualified." *Id.* Furthermore, motions for attorney disqualification are highly disfavored and "reserved for drastic measures." *Merchants Commercial Bank v. JFOV*, 2010 WL 11718588 *2 (V.I. Super. Ct. 2010). The Court must balance the "right of a party to retain counsel of his choice and the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system." *Id.* at 2 (quoting *Lamb v. Pralex Corp., et al.*, 46 V.I. 213, 216 (D.V.I. 2004) (citing *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Disqualification requires the court to determine whether the litigation will be "tainted." *Fenster v. deChabert*, 2017 WL 4969896 *2 (V.I. Super. Ct. 2017). Accordingly, this Court "should disqualify ... only when it determines on the facts of the particular case that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *See Farrell v. Hess Oil Virgin Islands* at *2.

## II.    Sanctions.

¶9.    Pursuant to Virgin Islands Rule of Civil Procedure 30(d)(2), this Court "may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." This Court has inherent authority to fashion any appropriate sanctions after reviewing any "willfulness or bad faith ... and the misbehavior of all parties." *The Nature Conservancy, Inc v. Louisenhoj Holdings, LLC.* 2014 WL 3509046 *1 (V.I. Super. Ct. 2014). To determine the appropriate sanction, the Court considers four factors: (1.) the duty violated; (2.) the lawyer's mental state; (3.) the potential or actual injury caused by the lawyer's misconduct; and (4.) the existence of aggravating or mitigating factors. *See In re the Suspension of Welcome*, 58 V.I. 604, 609 (V.I. 2013) *citing V.I. Bar v. Brusch*, 49 V.I. 409, 420 (V.I. 2008). The Court analyzes the first three factors to determine whether sanction is

5

appropriate, and only considers "the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Id.*

## ANALYSIS

¶10.    In the Virgin Islands, attorneys are held to the standards set out by the American Bar Association's Model Rules of Professional Conduct ["MRPC"] and codified in the Virgin Islands Rules of Professional Conduct.[4] Attorney Sheesley's request for sanctions and disqualification against Attorney Persad are based on Attorney Persad's alleged violations of several rules of professional conduct. Attorney Persad's request for sanctions against Attorney Sheesley is grounded in Attorney Sheesley's alleged racial microaggressions throughout this matter. The Court will address each separately.

### I.    Attorney Sheesley's motion for Attorney Persad's disqualification.

¶11.    Disqualification is a drastic measure with a heavy burden to protect the party's right to counsel of their choice. *See Farrell v. Hess Oil Virgin Islands*, at 2. Administrative Order 2020-0015[5] provided for depositions to occur virtually due to COVID-19, thus McLaughlin's deposition took place remotely on October 15, 2020. McLaughlin, both attorneys, and the court reporter were in different jurisdictions, Florida, Connecticut, and the Virgin Islands, at the time the deposition occurred. Although this became the standard practice of taking depositions since the Administrative Order was issued, Attorney Persad challenges the authenticity of the deposition because McLaughlin was not sworn in the physical presence of the person administering the oath. Attorney Persad is also arguing the court reporter was not qualified to administer the oath. Further, throughout McLaughlin's deposition, Attorney Persad interrupted questioning to give instructions to McLaughlin, such as: look

---

[4] V.I. S. Ct. Rule 211.
[5] *See* Supreme Court of the Virgin Islands Administrative Order 2020-0015, at 5-6 (August 14, 2020).

at the screen while giving an answer; how to tilt his head so that Attorney Persad could fully see him; and when to stop speaking.[6] In response, Attorney Sheesley told Attorney Persad that this was not his witness, he would get his turn, and to stop giving instructions.[7] Attorney Persad responded by saying this demand to stop speaking to the deponent exhibits racist conduct by Attorney Sheesley.[8] The foregoing instances were the beginning of a downward spiral as the excessive objections and negative accusations continued throughout the deposition. McLaughlin, a non-party witness, unilaterally informed the Court that the behavior was "so appalling" that he was requesting the Court to "take some action to control this deposition."[9] During the deposition, the parties obtained Court intervention.[10] Following the deposition, Attorney Sheesley filed a motion requesting the disqualification of Attorney Persad and his firm.

¶12.    A motion to disqualify involves a two-step inquiry: "[o]nce courts find or suspect a substantive violation, they then engage in a balancing test to determine whether disqualification is the appropriate remedy for the case." *Fenster v. deChabert*, at *6. As to the first step, courts look to the Comments accompanying the MRPC for guidance to determine whether a substantive violation has occurred. *See Id.* Then, the Court determines whether disqualification is appropriate.[11]

---

[6] McLaughlin Deposition at 21:14-25, 42:23-25.

[7] McLaughlin Deposition at 22:22-25, 26:8-12.

[8] McLaughlin Deposition at 55:9-13.

[9] Letter from Brice McLaughlin to Judge Carty's Chambers, October 20, 2020, states, in part: "I am embarrassed for the court that a member of the V.I. Bar would behave in such a manner.... I would suggest that the court take some action to control this deposition. Casually slinging racial slurs has no place in our society and certainly not in a legal deposition. I would recommend a moderator, or some other form of legal professional be assigned to oversee the remainder of the deposition...."

[10] The Court telephonically advised both parties to continue the deposition without any further personal attacks. The Court also allowed for the temporary break in the deposition for Attorney Sheesley to attend a separate court conference scheduled on the same day.

[11] *See Fenster v. deChabert*, at *9 (emphasizing that in regard to motions to disqualify counsel, attorneys are discouraged from "[using] the motions as a tactic to harass the opposing party and lawyer, where 'mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice[.]'"

¶13. Attorney Sheesley's argument on this issue is twofold. First, he argues that Attorney Persad violated Rule 211.4.2 regarding Persad's *ex parte* discussions with McLaughlin prior to, during, and following the break in the deposition on October 15, 2020; and second, Attorney Persad violated Rule 211.4.3 because Persad had an obligation to inform McLaughlin that he may be liable in this case and did not. The Court agrees that Attorney Persad had an obligation to inform McLaughlin of his intent in deposing him and notify him that he may be sued, if Persad so intended. However, the *ex parte* discussions between Attorney Persad and McLaughlin prior to the conclusion of the deposition; and failure to notify do not rise to the level of disqualification.

¶14. Rule 211.4.2 proscribes:

"In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

To support his argument, Attorney Sheesley relies on *Inorganic Coatings, Inc. v. Falberg*, 926 F. Supp. 517, 520 (E.D. Pa. 1995). The *Inorganic Coatings, Inc.* court disqualified an attorney who engaged in *ex parte* communications; however, that court discussed several factors which need to be taken into consideration when determining whether an attorney should be disqualified. A heavily weighed factor is that a party has the right to the counsel of its choice. *Id.* The court stated that this factor "yield[s] ... to considerations of ethics which run to the very integrity of our judicial process." *Id.* Attorney Sheesley relies on this statement to argue that Attorney Persad must be disqualified for his *ex parte* communications to preserve the integrity of the judicial process. The Court is not convinced.

¶15. There are pronounced differences between the ethics violations in *Inorganic Coatings, Inc.* and this case. In *Inorganic Coatings, Inc.*, there were two defendants involved in the underlying

8

litigation. One of the defendants, Falberg, initiated a telephone conversation with plaintiff's counsel "in an attempt to sell the settlement proposal which his attorney had failed to do earlier in the day." *Id.* at 520. At this juncture, plaintiff's counsel knew that Falberg was represented by an attorney and advised Falberg that it would be best if he spoke with his counsel instead. *Id.* Despite this, plaintiff's counsel continued with the phone conversation, which lasted over 90 minutes and discussed numerous items that were involved in the litigation, such as Falberg's relationship with the plaintiff, Falberg's dealings with the other defendant, Falberg's customers, the other defendant's manufacturing processes, potential witnesses involved in the case, and Falberg's own opinions of what is at issue. *Id.* at 521. Plaintiff's counsel took 24 pages of notes during this conversation. *Id.* at 518. The *Inorganic Coatings Inc.* court found that there was sufficient evidence to conclude that this *ex parte* exchange of information discussing the merits of the impending lawsuit, without the presence of Falberg's counsel, was highly prejudicial to the other defendant in the case and therefore disqualified the plaintiff's counsel. *Id.* This is vastly different from the *ex parte* communications between Attorney Persad and McLaughlin.

¶16.    Here, the *ex parte* communication is through email and involves requesting documents that McLaughlin discussed in his deposition.[12] Specifically, Attorney Persad is requesting the December 2019 loan pre-qualification letter which McLaughlin referenced in his deposition. Attorney Sheesley relies on this October 18, 2020, email exchange between Attorney Persad and McLaughlin:

Attorney Persad:

> "While you are sending your emails, please be sure to also send me the emails which confirm you sent the December 2019 loan qualification letter regarding the subject property you referenced in your deposition that you insisted you prepared, signed and

---

[12] Plaintiffs' Motion for Sanctions, at 6.

provided to Ms. Jones. Thus far, you have not sent any such email or other proof that you did in fact author, sign, and transmit the letter to Ms. Jones."

McLaughlin's Response:

"Thank you Tee, to be clear, I did confirm that I pre-qualified Ms. Jones for the purchase. However, I did not confirm whether the pre-qualification letter to which you refer was signed or delivered by me to Ms. Jones. I did acknowledge that it appeared to be in the format of my standard pre-qualification letter. However, I have also sent evidence for [the] record where [Attorney Jalicha Persad] has questioned the authenticity of the document based on Meta [Data] contained within, suggesting it may have been modified by another party. As I am not very familiar with Meta Data in Word documents, I'll need to research this before responding."

Attorney Sheesley argues that because Defense counsel has not served these documents in discovery, the Plaintiffs are prejudiced as a result.[13] However, Attorney Sheesley possesses the pre-qualification letter and referenced the letter in the Plaintiffs' Complaint.[14] Additionally, during the deposition Attorney Persad acknowledged that he would send an email to McLaughlin about obtaining the documents and, if necessary, issue subpoenas.[15] As both attorneys are on notice of the forthcoming documents, the *ex parte* communications in this case do not prejudice Plaintiffs.

¶17. Further, this Court has recognized that Rule 211.4.2 allows for some communication between a lawyer and an unrepresented party when the lawyer "has explained that the lawyer represent[s] an adverse party and is not representing the person."[16] *See Fenster v. deChabert*, at *16. In this case, it is clear that McLaughlin fully understood that Attorney Persad represented only the Defendant and not him.[17] Attorney Sheesley relies on McLaughlin's one-time statement that McLaughlin needs to consult a lawyer to argue that Attorney Persad violated this rule by communicating with McLaughlin

---

[13] *Id.*

[14] Defendant's Opposition at footnote 67.

[15] *See* McLaughlin Deposition at 247-48.

[16] *Fenster v. Dechabert*, 2017 WL 4969896 *16 (V.I. Super. Ct. 2017).

[17] *See infra* 11 n.14. McLaughlin's statement: "I will try to answer in a way that satisfies both of you."

after October 15, 2020. McLaughlin's statement was that he must consult a lawyer before releasing a client's information.[18] However, this does not equate to McLaughlin having a lawyer involved in the matter, which would then violate Rule 211.4.2.

¶18.    Comment 4 to Rule 211.4.2 reiterates this and states:

> "This Rule does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation. ... nor does this Rule preclude communication with a represented person who is seeking advice from a lawyer who is not otherwise representing a client in the matter."

McLaughlin stated, "I will check with the attorneys and whatever is legally allowed to be released will be released,"[19] implying that McLaughlin needs to consult with First Liberty's legal counsel prior to transmitting this information from a client's file. McLaughlin is not a party to this case and the company's lawyer is not involved in this matter; therefore, Attorney Persad did not violate Rule 211.4.2.

¶19.    On the second argument, regarding counsel's obligation to inform, Attorney Sheesley posits that Attorney Persad's *ex parte* communications violate Rule 211.4.3. Rule 211.4.3 states:

> "In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client."[20]

Attorney Sheesley argues that although McLaughlin is not a party in this case, Attorney Persad still had a duty to inform McLaughlin that he may be found liable in this case before having any *ex*

---

[18]*See* McLaughlin Deposition at 216:1-15.
[19] *Id.*
[20] V.I. Rules of Professional Conduct 211.4.3.

*parte* communications with him under Rule 211.4.3. To support this proposition, Attorney Sheesley relies on *In re Malofiy*, 653 F.App'x. 148 (3rd Cir. 2016).

¶20.    In *In re Malofiy*, several defendants were being sued for copyright infringement. The plaintiff's attorney failed to tell one of the defendants that he was a party to the case before deposing him and using his statements as evidence against him. *See In re Malofiy* at 152. The defendant was unrepresented and had never been a defendant before. *Id.* at 151. The attorney in that case continuously spoke with the defendant, convinced him he was not a party in the case by stating the plaintiff was "not going to do anything" to him, and then obtained a default judgment against him. *Id.* This is entirely different from what happened following McLaughlin's deposition.

¶21.    In this matter, the *ex parte* communications between Attorney Persad and McLaughlin are improper and Attorney Persad should have informed McLaughlin that he could potentially become a party to the matter; however, there are apparent differences between the case at bar and the *ex parte* communications in *In re Malofiy*. Here, McLaughlin was not an unsuspecting deponent. At one point in the deposition McLaughlin stated: "I will try to answer in a way that satisfies both of you."[21] Additionally, McLaughlin had stated that he has been deposed before in a similar case.[22] McLaughlin fully understood the role and interests of both attorneys, unlike the deponent in *In re Malofiy* who had never been a party to a case before. *See In Re Malofiy*, at 151. Furthermore, MRPC's Comment 4.3 (2) states:

> "[t]he Rule distinguishes between situations involving unrepresented persons whose interests may be adverse to those of the lawyer's client and those in which the person's interests are not in conflict with the client's."

---

[21] *Id.* at 112:10-24.
[22] McLaughlin's Deposition at 218.

Although the Court agrees with Attorney Sheesley that Attorney Persad should have notified McLaughlin that he may be a potential party, McLaughlin has no stake in the real estate transaction between the parties. Currently McLaughlin is not a party to this matter and therefore does not have an interest adverse to the Defendant. Thus, the *ex parte* communications between Attorney Persad and McLaughlin are not a substantive violation of Rule 211.4.3.

¶22.    After reviewing the facts and evidence of this case, professional conduct Rules 211.4.2 and 211.4.3, and applicable case law, this Court finds that Attorney Persad's conduct with McLaughlin does not require disqualification from this case because it was not a substantive violation. To disqualify counsel from the representation of his client would strip Defendant of her right to choose her counsel. None of the information provided is sufficient to meet the drastic measure of disqualification, and such a delay in the discovery process would taint the judicial process.

## II.    Attorney Sheesley's motion for sanctions.

### a.    Attorney Persad did not violate Rules 211.3.4 (a) and (e).

¶23.    Attorney Sheesley alleges that Attorney Persad's actions during and following the deposition of McLaughlin violated V.I.R. Civ. P. 30(c)(2). Attorney Sheesley cites to specific instances of Attorney Persad's continued statements instructing the witness during and after deposition, "intimidat[ing] [McLaughlin] with threats," and for making "argumentative and suggestive" speaking objections throughout the deposition.[23] Further, Attorney Sheesley argues that Attorney Persad "impede[d], delay[ed], or frustrate[d]" the deposition of McLaughlin and the Plaintiffs' ability to get testimony from this witness.[24]

---

[23] Plaintiffs' Motion for Sanctions, at 4-5.
[24] *Id.* at 11.

¶24.    Attorney Sheesley's arguments for sanctions are similar to his arguments for disqualification for violation of Rule 211.4.2; the basis being that Attorney Persad allegedly engaged in improper *ex parte* communications with McLaughlin. Specifically, Attorney Sheesley argues Attorney Persad should be sanctioned for violating Rules 211.3.4 (a) and (e) for "unlawfully obstruct[ing] another party's access to evidence." The allegation is that Attorney Persad's *ex parte* communication shows Persad has withheld evidence in this case, impeding the Plaintiffs' ability to obtain evidence.[25]

¶25.    Rule 211.3.4 states a lawyer shall not:

> "(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
>
> ...
>
> (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused;"

Comment (2) to the Rule provides further clarity:

> "Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is altered, concealed or destroyed..."

As noted, this is not the case at bar. The *ex parte* email communications which Attorney Sheesley alleges unlawfully obstruct the Plaintiffs' access to evidence discusses Attorney Persad obtaining the documents which McLaughlin stated multiple times throughout the deposition that he would provide to both parties after the deposition.[26] Since McLaughlin had provided these documents and Attorney Sheesley possessed the documents, Attorney Persad has not concealed evidence in the manner which

---

[25] *Id.* at 12.
[26] *See* McLaughlin Deposition, at 215:1-8, 247-248.

Attorney Sheesley alleges. Thus, the Plaintiff's ability to properly obtain evidence has not been obstructed. As such, this Court finds that Attorney Persad did not violate Rules 211.3.4 (a) and (e).

### b. Attorney Persad frustrated the deposition violating MRPC 8.4(g).

¶26. Attorney Sheesley further argues that Attorney Persad's actions violate MRPC 8.4(g), thus frustrating the deposition. While the Virgin Islands has not adopted 8.4(g), the V.I. Rules of Professional Conduct have traditionally adopted the MRPC and mirrors other provisions of the MRPC, therefore this Court will address the importance of 8.4(g) without imposing sanctions for violations of the rule. Rule 8.4(g) states that it is professional misconduct for a lawyer to:

> "engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law."

¶27. During the deposition of McLaughlin, Attorney Persad deployed many unwarranted attacks on Attorney Sheesley's character. Now, while the Court will not sanction Attorney Persad, the Court finds admonishment necessary in this matter. Several examples are discussed here. In a discussion about scheduling the remainder of the deposition for a different afternoon, the conversation completely derailed. Leading to this discourse, Attorney Persad had already accused Attorney Sheesley of racist, unprofessional conduct during the deposition.[27] Attorney Sheesley then stated he had to stop the deposition at 2:00 p.m.[28] to which Attorney Persad stated that Attorney Sheesley did not previously tell him he was going to stop at 2:00 p.m.[29]

> "**Persad:** You did not say you are going to be stopping at 2:00 o'clock. I'm okay with that. All I want to know is whether or not you are going to cooperate with us to reschedule so that we can continue this deposition. Because just because you say

---

[27] *See McLaughlin Deposition*, at 55-58.
[28] *See McLaughlin's Deposition*, at 117-120.
[29] *Id.*

it's ended, it doesn't end until obviously the defendant has an opportunity to cross-examine the [w]itness.

**Sheesley:** If you would like to place an apology to me on record right now and admit that everything you said was false and that you are sorry for making those allegations, I am happy to have a collegial conversation with you. But I am not really willing to do that based on what you said to me.

**Persad:** Just seems like another racist statement to me. You know and primarily you are saying you're right, and I am wrong. And everything you say is correct and everything I say is wrong. And –

**Sheesley:** I didn't say that.

**Persad:** -- that's a very colonial and racist statement to make. And quite frankly to deal with a scheduling thing, it's just inappropriate. It's so easy to just schedule this thing. It's so easy to be professional and –

**Sheesley:** Everything you are saying is so incredibly unprofessional, so incredibly false and so incredibly laughable. I mean, it's a disservice to you, it's a disservice to your client. The repeated attacks without basis on me. You know, sir, whenever you say something that you are accusing me of being a colonialist, a racist without knowing me personally, barely knowing me professionally, sir, that makes you a -- a -- a bad person, period. There is no response to that because I do not have to defend myself against false allegations. It's improper. And this is going to result in a Bar complaint against you.

**Persad:** So -- so -- so, again, I am coming back to the scheduling issue, right. The scheduling issue is pretty straightforward..."[30]

Conversations of this nature continued throughout the remainder of the deposition. What should have been a simple objection or scheduling issue derailed into a heated exchange.

¶28.    Yet, this conduct was not limited to the deposition, but followed in several emails, including one email thread where Attorney Sheesley requested that Attorney Persad stop communicating with McLaughlin while he is still under oath.[31] Attorney Persad's inappropriate response to this simple

---

[30] McLaughlin's Deposition, at 120-121.
[31] Plaintiffs' Motion for Sanctions, at 8.

request was, "I am left to wonder if your actions are racially motivated and if you believe you can continue to treat us with such derogation because we are not white."[32]

¶29.    Attorney Persad's inappropriate conduct was also directed at McLaughlin. Throughout the deposition Attorney Persad would interrupt McLaughlin as he was trying to answer and would repeat questions despite McLaughlin answering to the best of his ability.[33] One instance occurred when Attorney Persad presented a hypothetical and asked McLaughlin, if he did not produce a document in response to a subpoena, then did McLaughlin issue the document at all?[34] However, the document in question was provided by McLaughlin and Attorney Persad had the document in his possession.[35] In response, McLaughlin confusedly asked clarifying questions and stated that the premise of the question is inaccurate because the document had been produced. Attorney Persad resorted to attacks on McLaughlin's credibility and constantly reminded McLaughlin he is under oath when McLaughlin repeatedly answered the question:[36]

> "**Persad:** So, does that mean you are refusing to answer the question?
>
> **McLaughlin:** No. I am telling you that, again, your premise is that I didn't do something, when you had admitted and showed the document itself.
>
> **Persad:** Okay.
>
> **McLaughlin:** So, why are you asking me if I didn't produce a document that you have in your possession?
>
> **Persad:** I am reminding you you're under oath there, Mr. McLaughlin. And so, I am going to ask you a follow-up question since you are refusing to answer that question.

---

[32] *Id.*
[33] *See* McLaughlin's Deposition at 240-242.
[34] *Id.* at 239.
[35] *Id.* at 236.
[36] *Id.* at 241-242.

> **McLaughlin:** I'm not -- I'm not refusing. I'm not refusing. I've answered it. If you want to ask it again, I'll answer it a different way if you'd like.
>
> **Persad:** Okay. (Attorney Persad then asks the Court Reporter to repeat the question again.)
>
> ....
>
> **McLaughlin:** So, once again, I am going to answer the question with, the document was produced. So, your question of if I didn't do it is superseded by the fact that it's been produced and you have it.
>
> **Persad:** Okay. So, again, you're under oath. You remember -- you realize you're under oath; right?
>
> **McLaughlin:** I'm the one with the answered questions. Are you telling me I need to answer the questions in a manner that you prefer?
>
> **Persad:** So, you realize you're under oath? That's the question. Do you realize you're under oath, sir?
>
> **McLaughlin:** I said, yes.
>
> **Persad:** And do you realize that you have an obligation to tell the truth today?
>
> **McLaughlin:** Yes."

¶30.     Other instances during the deposition include Attorney Persad interrupting McLaughlin while answering a question, accusing McLaughlin of being friends with the Plaintiffs and Attorney Sheelsey, and referring to McLaughlin as "combative."[37] Following the deposition, McLaughlin wrote a letter to both attorneys, stating that he found Attorney Persad's behavior at the deposition to be hostile and intimidating.[38] Attorney Persad responded by insinuating McLaughlin cannot "understand how people of color interpret certain words, tones, and behavior from people who

---

[37] *See* McLaughlin's Deposition at 218-221.
[38] Letter from McLaughlin to Attorneys Persad and Sheesley dated October 15, 2020, stating, in pertinent part: "I answered your questions, and you apparently did not like the answers or the manner in which the answers were delivered. Neither would be a reason to question my integrity in providing the truth as I committed to do in these proceedings, nor invoke the need to remind [me] of my oath. I took [this] continued pressing on the oath to be a tactic of intimidation, and as I understand it, intimidating the deposed is not acceptable."

18

consider themselves to be white," and further that McLaughlin can only interpret situations from his perspective and is "blind to other interpretations."[39] This unnecessary and baseless attack on McLaughlin's character shows a consistent pattern of Attorney Persad contorting the events when, in fact, the evidence shows otherwise.

¶31. Attorney Persad continued on this path when he filed a motion requesting the recusal of the undersigned judicial officer following the motions hearing on March 15, 2021. Attorney Persad's motion accused this Court of being unable to remain impartial because following the deposition McLaughlin unilaterally emailed the Court, to its personal email address[40], expressing his displeasure of Attorney Persad's treatment during the deposition. The email reads:

> "Judge, attached please find my documentation of serious concerns with my deposition in this case. I would greatly appreciate your review and consideration in this matter. I apologize for sending this to your personal email but did not have your official email available. Best Regards, Brice"[41]

Additionally, Attorney Persad argues McLaughlin's statement: "[t]hank you for the update Deborah," which addresses the Court's Judicial Secretary by her first name, requires recusal of the Court.[42] The Court addressed this by first immediately advising both counsel of the email and discouraging the use of personal email and encouraging communication through counsel. Then, the Court addressed this again at the evidentiary hearing, by summarily stating that the use of personal email was completely irrelevant to the current motions for sanctions. The Court denied the motion for recusal. This is yet another example of how Attorney Persad's depiction of the events can only be described as a distorted

---

[39] *See* Letter from Attorney Persad to Brice McLaughlin and Attorney Sheesley, October 18, 2020.

[40] First Liberty Mortgage, as well as several other institutions, has the Court's personal email address. Likewise, so does CPLS, P.A., Attorney Persad's firm. The Court is completely unaware as to how CPLS, P.A. obtained its personal email address.

[41] October 22, 2020 email from Brice McLaughlin to the Court.

[42] October 28, 2020 email from McLaughlin to the Court's Judicial Secretary.

view used in an attempt to intimidate Attorney Sheelsey, McLaughlin, and this Court. As Attorney Persad is aware, the filings in this jurisdiction are public and the accusations stated in these motions could have unintended consequences and therefore need to be addressed.

¶32.    Making public accusations about opposing counsel, when the overt nature of his actions is in line with normal attorney duties, can have severe consequences for the attorney. *See U.S. v. Kouri-Perez*, 8 F.Supp.2d 133 (D.P.R. 1998); *Deutsch v. Clark et al.*, 16-cv-880LY (W.D. Tex. 2016). In *U.S. v. Kouri-Perez*, defense counsel filed a motion with the court consisting of damaging statements about the Assistant United States Attorney (AUSA) on the case. These statements unfoundedly accused the AUSA of being a relative of a former Dominican dictator. *Id.* The *Kouri-Perez* court stated that these public accusations were a violation of the AUSA's privacy, inappropriate, and sanctionable. *Id.* The reputation of the oppressive dictator was not a secret to the press, the court, or the prospective jury pool and now the AUSA was publicly associated with his reputation. *Id.* The court found that the statements were not made to further any legitimate advocacy and, instead, had the purpose of being a public personal attack against the AUSA. *Id.*

¶33.    This is further illustrated in *Deutsch v. Clark et al.*, where that court sanctioned an attorney for "repeatedly mis[leading] the court regarding the basis for and intent of multiple motions and other filings; [and] [using] the federal judiciary's public filing service to conduct a systematic character assassination of one of [the city's] most dedicated defenders of the rights of the marginalized..." *Id.* at 37-38. In that case, the defense counsel's assistant copied opposing counsel on an email where she referred to opposing counsel as "el sapo," the Spanish word for toad. *Id.* at 8. Immediately after the email was sent, defense counsel apologized profusely. *Id.* Opposing counsel filed a motion for sanctions for the comment.

20

¶34. The *Deutsch v. Clark* court referred to the defense counsel in that case as a highly accomplished attorney who had spent his career working with marginalized groups throughout Texas. *Id.* at 37-38. He had several character witnesses which the court found more credible than opposing counsel. *Id.* at 32. Further, opposing counsel had "over 100 court filings of *ad hominem*, outrageous attacks on [defense counsel's] character," and "the only justification ... was that [defense counsel] referred to him as [toad] in an e-mail." *Id.* That court then distinguishes the major difference in the conduct between the two attorneys. The court stated that although defense counsel acknowledged that the *el sapo* reference was not intended to be a term of endearment, the defense counsel did not publicize the term *el sapo* in connection with opposing counsel, unlike opposing counsel filing multiple motions of *ad hominem* attacks against the defense counsel. *Id.* at 33. The court further points out the *el sapo* reference "only entered the public realm when [opposing counsel] filed the e-mail attachment in his own motion." *Id.*

¶35. As explained in both *Kouri-Perez* and *Deutsch v. Clark et al*, the public filing of motions which include unfounded, damaging information about opposing counsel does not further legitimate advocacy or the litigation process. As Attorney Persad is fully aware, damaging allegations can have the detrimental impact of ruining someone's career. The comments against opposing counsel made by both attorneys during McLaughlin's deposition are unprofessional, intolerable, and do not advance any legitimate purpose. Moreover, Attorney Persad has not set forth an iota of evidence to support his discriminatory allegations against Attorney Sheesley. The filings here were filed publicly; therefore, Attorney Persad's unsubstantiated racial allegations can be accessed by anyone and can result in severe unintended consequences. As such, the Court strongly warns against making

21

detrimental statements about opposing counsel in a public filing to the Court when it bears absolutely no relation to legitimate advocacy.

### III.    Attorney Persad's motion for sanctions.

#### a.    McLaughlin's deposition was a valid deposition under V.I.R. Civ. P. 30.

¶36.    To countervail Attorney Sheesley's motion, Attorney Persad responded with a similar motion to request sanctions against Attorney Sheesley. Attorney Persad argues sanctions are warranted against Attorney Sheesley because: (1.) Brice McLaughlin's deposition is invalid, and (2.) Attorney Sheesley's alleged racial micro-aggressions and other behavior impeded and obstructed the deposition and the fair administration of justice. The Court strongly disagrees with both arguments.

¶37.    Attorney Persad argues that since the court reporter was not authorized, designated, or commissioned to take the deponent's oath and was not physically before the deponent, as required by 5 V.I.C. § 4921, the deposition is invalid. However, Attorney Persad has failed to provide any evidence showing that the court reporter was not authorized to take the deponent's oath. The court reporter for McLaughlin's deposition is a certified reporter in the Virgin Islands and authorized to administer the deponent's oath.[43] Further, Attorney Persad relies on the Supreme Court of the Virgin Islands Administrative Order[44] regarding COVID-19 to argue that because this deposition was taken outside of the Virgin Islands, McLaughlin must have been sworn in-person. To support his argument that the deposition needed to take place in the Virgin Islands for the oath to be proper, Attorney Persad relies on this portion of the Order:

> "[n]otaries and other persons qualified to administer an oath *in the Virgin Islands* may swear the deponent remotely, provided they can positively identify the deponent through the remote connection...."[45]

---

[43] *See* McLaughlin's Deposition, at 1: "Reported by: Casmus A. Caines, Certified Reporter ... St. Thomas, V.I."
[44] Supreme Court of the Virgin Islands Administrative Order 2020-0015, at 5-6 (August 14, 2020).
[45] *Id.* at 6.

Certainly, this narrow reading of the Administrative Order would make the Order futile. The Administrative Order was issued to minimize person-to-person contact during the global pandemic. To interpret this Order to mean that it only applies to depositions taken in the Virgin Islands, and not regarding cases under the jurisdiction of the Virgin Islands, is implausible and defeats the purpose of the Order and would delay litigation. For completeness, that portion of the Order begins, in pertinent part: "[n]otwithstanding any court rule to the contrary, all depositions shall be conducted through a remote connection, i.e., telephonically or video conference, with no attorneys or stenographers physically in the presence of the deponent."[46] Although McLaughlin's deposition occurred via Zoom, the deposition constructively took place in the Virgin Islands.[47] Even if McLaughlin's deposition was to be conducted pursuant to Connecticut or Florida law, both states have allowed for remote oath administration during the COVID-19 pandemic. On March 30, 2020, and extended on June 16, 2020, the Governor of Connecticut signed an executive order establishing remote notarization procedures.[48] Similarly, the Florida Supreme Court issued Administrative Order AOSC20-16 on March 18, 2020, stating, in pertinent part:

> "(1). Notaries and other persons qualified to administer an oath in the State of Florida may swear a witness remotely by audio-visual communication technology from a location within the State of Florida, provided they can positively identify the witness; and (2.) If a witness is not located within the State of Florida, a witness may consent to being put on oath via audio-video communication technology by a person qualified to administer an oath in the State of Florida..."[49]

---

[46] *Id.* at 6-7.
[47] McLaughlin Deposition, at 1 stating: "THE ORAL DEPOSITION OF BRICE MCLAUGHLIN, taken on Thursday, October 15, 2020, remotely via Zoom videoconferencing services, in St. Thomas, Virgin Islands 00802..."
[48] *See* State of Connecticut Executive Orders 7Q §3 (March 30, 2020) and E.O. 7ZZ §12 (June 16, 2020).
[49] Supreme Court of Florida Administrative Order AOSC20-16 (March 18, 2020).

What is more perplexing, is that it is the same deposition that Attorney Persad wants to invalidate to also support his allegations of Attorney Sheelsey impeding, delaying, and frustrating the deposition. Contradicting himself again, it is the same deposition that Attorney Persad constantly reminded McLaughlin that he is under oath for. Attorney Persad cannot have it both ways. As such, the Court finds that the October 15, 2020 deposition was a proper deposition under V.I.R. Civ. P. 30.

### b. Attorney Sheesley did not frustrate McLaughlin's deposition.

¶38.    Additionally, Attorney Persad argues that Attorney Sheesley frustrated the deposition by objecting inappropriately, trying to influence McLaughlin, cutting the time short, and giving inadequate instructions to McLaughlin. The Court is not convinced. An attorney did not frustrate the deposition when opposing counsel has the ability to complete the deposition. *See GMAC Bank v. HTFC Corp.*, 248 F.4.D. 182 (E.D. Pa. 2008); *Otis v. Demarasse*, 399 F.Supp.3d 759, 765 (E.D. Wis.). For example, in *GMAC Bank v. HTFC Corp.*, the court imposed sanctions on an attorney for frustrating the deposition; however, in that case the attorney's client spent twelve hours berating and threatening opposing counsel and using profuse vulgarity throughout the deposition. The court issued sanctions not only on the deponent, but on the attorney for not stopping the deposition and interjecting. *Id.* at 198. In this matter, Attorney Sheesley's behavior was professional, and not surprisingly, he defended himself against the unwarranted attacks by Attorney Persad. Therefore, the Court is not persuaded by Attorney Persad's argument.

¶39.    As distinguished, in *Otis v. Demarasse*, counsel objected fifty-five times over the course of seventy minutes. *Otis*, at 764. The *Otis* court did not sanction the attorney for the objections. The court reasoned that the objections were not improper, and the attorney did not instruct the witness that he could not answer the questions that were objected to. *Id.* at 769. Further, that court goes into detail

24

about speaking objections and determined that there has been a reluctance to impose sanctions solely based on "voluminous, unwarranted, and argumentative" objections when opposing counsel was able to complete the deposition. *Id.* Additionally, that court concluded that sanctions are more appropriate when opposing counsel makes interruptions which include instructing the witness not to answer. *See Id.*

¶40. Here, Attorney Sheesley did not instruct McLaughlin to not answer. While Attorney Persad may perceive Attorney Sheesley's conduct as less than professional, considering the accusations weighed against him and his continuous attempts to obtain evidence from the deponent despite the accusations, the Court finds that Attorney Sheesley did not frustrate the deposition.

### c. Attorney Sheesley did not engage in racist conduct throughout this case.

¶41. Finally, Attorney Persad argues that sanctions should be imposed upon Attorney Sheesley because of his racial micro-aggressions and other conduct throughout this case. The Court will adopt the American Psychological Association's definition of the term "microaggressions" which states:

> "brief and commonplace verbal, behavioral, or situational indignities that communicate hostile, derogatory, or negative slights or insults, especially toward members of minority or oppressed groups. Microaggression may be intentional (e.g., calling a transgender person a "she-male") or implicit (e.g., a White employee asking a Black colleague how he or she got a certain job, implying that the colleague may have obtained it through affirmative action or a quota system)."[50]

Attorney Persad points to several statements and actions by Attorney Sheesley to argue that these micro-aggressions have frustrated the deposition. Some of the specific statements made by Attorney Sheesley were "I don't care what your nationality is,"[51] "[y]our communications with me throughout this case [are] improper, unnecessary. I'm not impressed with you. I'm not impressed with your

---

[50] *See* American Psychological Association's Dictionary of Psychology, Second Edition (2015): *Microaggression.*
[51] McLaughlin's Deposition, at 62:20-21. *See also* Defendant's Motion for Sanctions, at 18, ¶1.

blustering,"[52] and the adage of "I don't care what color your skin is."[53] Notably absent from Attorney

Persad's motion is the context within which the statements were made. These statements, among other

conduct that Attorney Persad has found to be offensive, are not enough to impose sanctions upon

Attorney Sheesley.

¶42.   While Attorney Persad may perceive these statements as racially motivated, the Court finds

no evidence of this. This Court has painstakingly reviewed the videotaped deposition in its entirety

and has not found a shred of evidence to support Attorney Persad's allegations. Courts across the

United States have imposed sanctions and suspended attorneys for racist or otherwise discriminatory

conduct. *See In re Williams*, 414 N.W.2D 394, 397 (Minn. 1987); *In re McCarthy*, 938 N.E.2d 698

(Ind. 2010); *In re Baker*, 993 N.E.2d 1138, 1139 (Ind. 2013). In *In re Williams*, one attorney used an

anti-Semitic slur against opposing counsel during a deposition. The *Williams* court stated that this

was clearly an ethics violation, in fact it was so clear "it need[ed] no discussion." *Id.* at 398. Further,

in *In re McCarthy*, one attorney used an explicit racial slur in an email addressed to the secretary of

opposing counsel. The *McCarthy* court stated this was clearly a violation of 8.4(g), which prohibits

engaging in biased or prejudicial conduct based upon race, unless the conduct constitutes legitimate

advocacy. *Id.* Additionally, the court in *In re Baker*, found that one attorney referring to opposing

counsel's client as "an illegal alien," and asking whether the client could understand the court's order

because of her citizen status was a violation of the ethics rules. That court reasoned that no matter

how frustrated the attorney became with the client (for violating the court's order), "accusing the

[client] of being in the country illegally is not legitimate advocacy concerning the legal matter at issue

and served no substantial purpose other than to embarrass the [client]." *Id.*

---

[52] McLaughlin's Deposition, 25:5-6. *See also* Defendant's Motion for Sanctions, at 18, ¶7.
[53] McLaughlin's Deposition, at 62:19. *See also* Defendant's Motion for Sanctions, at 19, ¶9.

¶43. These cases demonstrate overt instances of racism and prejudice, which can be clearly distinguished from Attorney Persad's argument that Attorney Sheesley exhibited racial microaggressions. Racial microaggressions: "(a) tend to be subtle, indirect, and unintentional, (b) are most likely to emerge not when a behavior would look prejudicial, but when other rationales can be offered for prejudicial behavior, and (b) occur when Whites pretend not to notice differences..."[54]. Dr. Derald Wing Sue's work demonstrates the difficulty in identifying microaggressions, because often other explanations seem rational.[55] The Court is sensitive to the societal trend of addressing microaggressions in society, including in the workplace. Here, however, it is apparent that defense counsel is exploiting the movement to his advantage. Attorney Persad's argument is not stemming from the altruistic place of raising awareness about the harmful impact of microaggressions which he attempts to portray. Instead, Attorney Persad has distorted the facts to support his argument that Attorney Sheesley's actions are unintentional acts of racism, when in fact, the actions described are clearly overt acts of zealous advocacy. The Court has not found a scintilla of evidence where Attorney Sheesley engaged in racist conduct; however, what is evident in the deposition is throughout Attorney Persad's repeated disruptions, speaking objections, and personal attacks, Attorney Sheesley relentlessly continued to further the examination. Rather than being attributable as racist conduct, the problem, in this case, lies within Attorney Persad's perception and misguided critique of opposing counsel's advocacy style.

¶44. Early into the deposition, Attorney Sheesley told Attorney Persad to stop instructing the witness. Attorney Persad stated to McLaughlin, "I hope you can hear me, Brice because Mr. Sheesley

---

[54] Derald Wing Sue, et al., "Racial Microaggressions in Everyday Life: Implications for Clinical Practice." American Psychologist. (2007) at 278.

[55] *See Id.* at 275.

obviously is being really rude right now but that's his nature."[56] This Court finds this unprovoked

statement to be undoubtedly inappropriate and a personal attack upon Attorney Sheesley's character

in the presence of a witness. At another juncture during the latter part of McLaughlin's deposition,

Attorney Sheesley objected to a hypothetical question and stated:

> **"Sheesley:** I am going to object to hypothetical, and I am going to object to the fact that you've essentially threatened this [w]itness in order to finally get an answer that you're happy with. That's improper.
>
> **Persad:** All right. Mr. Sheesley, I realize this is not going well for you, and I can certainly appreciate that…
>
> **Sheesley:** Attorney Persad, are you actually charging your client for your time and [Attorney Jalicha] Persad's time because this is an incredible waste of time that your client is paying for.
>
> **Persad:** There you go again, Mr. Sheesley. You really don't know how your statements are coming across; do you?
>
> **Sheesley:** I'm assuming that you are going to say that I'm a racist and a white colonialist because that's been your default, which is completely improper and factually wrong.
>
> **Persad:** Your words this time, not mine."[57]

This signals to the Court Defendant's predisposition to Plaintiffs' counsel. Further, these exchanges

reflect the incivility that is a blight on the legal profession. Although Attorney Sheesley's actions in

this exchange may be considered less than exemplary, Attorney Persad's immediate, incomparable

response of insinuating Attorney Sheesley is racist and colonialistic far overshadows the other

comments. This cannot be overlooked. These types of exchanges occurred throughout the deposition.

At another moment during Attorney Sheesley's examination of McLaughlin, Attorney Persad told

---

[56] McLaughlin's Deposition 23:3-6; Defendant's Exhibit 21.
[57] McLaughlin Deposition, at 243:19-25, 244:1-19.

McLaughlin he cannot refer to documents without telling both attorneys what he is referring to.[58] To which McLaughlin stated he would, but that he did not know that from the beginning.[59] Rather than continuing with the deposition, Attorney Persad commented, "I'm sorry, Mr. Sheesley did not explain that."[60] This behavior continued on a downward spiral of incivility throughout the deposition and thereafter.

¶45.    However, the full context is important to analyze Attorney Sheesley's conduct considering the allegations made against him. Another example happened during Attorney Sheesley's examination of McLaughlin. Attorney Persad objected stating:

"Objection. Nonresponsive. I believe the question was her conversation with you, and I don't know that you are responding to that question."[61]

To which McLaughlin replied:

"Okay. I am sorry. Can you repeat the question? Maybe I didn't understand."[62]

Attorney Sheesley told McLaughlin that he can continue to what he was originally saying, so McLaughlin began to speak again. Then, interrupting McLaughlin, this exchange transpired:[63]

"**Persad:** [Court Reporter], can you read back the question, please?

**Sheesley:** You will get your turn to examine him. Do not instruct the Court Reporter, do not instruct the Witness. You have plenty of time. You are going to have plenty of time to ask your own questions.

**Persad:** Court Reporter, the Witness indicated that he [would] like the question read back.

**Sheesley:** Attorney Persad, stop. You will have your opportunity to ask questions.

---

[58] *See Id.* at 24:7-15.
[59] *Id.* at 24:16-17.
[60] *Id.* at 22-23.
[61] *See* McLaughlin Deposition, at 53:16-19.
[62] *Id.* at 53:22-23.
[63] *Id.* at 54-55:20.

> **Persad:** Mr. –
>
> **Sheesley:** You can do that at your time.
>
> **Persad:** Mr. Sheesley, I would –
>
> **Sheesley:** You are not going to interrupt me anymore.
>
> **Persad:** Mr. Sheesley, I would ask that you stop the racist -- that tone and comments that you are making. The first racist tone you made was that, you are not impressed with me.
>
> **Sheesley:** The what? I am sorry.
>
> **Persad:** Why do you think -- why do you think that a White man has to be impressed with someone that –
>
> **Sheesley:** Oh, Mr. Persad, this is absurd."

¶46.	Nothing in this exchange indicates that Attorney Sheesley was being racist towards Attorney Persad as Persad alleges. Attorney Sheesley was correctly informing McLaughlin that he could continue with his statement after Attorney Persad objected. Pursuant to V.I.R. Civ. P. 30(c)(2), "[a]n objection ... must be noted on the record, but the examination still proceeds." McLaughlin's continuance with his original statement shows that he understood the original question and did not need the transcript to be read back, neither did McLaughlin request for the question to be read back, despite Attorney Persad's persistence. This is just another example of over several instances where Attorney Persad accused Attorney Sheesley of exhibiting racist behavior in the deposition when Attorney Sheesley was attempting to examine the witness.

¶47.	To support the motion for sanctions, Attorney Persad also refers to impertinent extrinsic evidence of conduct outside of the deposition and the case to support his motion that Attorney

Sheesley engages in improper conduct and should be sanctioned. Among several other instances, Attorney Persad points to:

> (1.) Attorney Sheesley's conduct towards Attorney Persad, Attorney Jalicha Persad, and the Defendant where Attorney Sheesley either was curt or dismissed formalities,[64]
> (2.) Irrelevant articles about guides for people involved in gun violence written by Attorney Sheesley, and
> (3.) A compilation of court Orders and lawyers' motions in other cases involving Attorney Sheesley.[65]

Of course, none of this has any bearing on counsel's conduct during the deposition. Notably, Attorney Persad does not provide any legal authority to support imposing sanctions due to opposing counsel's behavior in other matters. Instead, he relies on other Court Orders where Attorney Sheesley was a litigator or litigant. These exhibits provided by Attorney Persad are completely irrelevant to the matter at hand and are a dishonorable attempt to distort reality and bolster Attorney Persad's view of the events.

¶48.    In fact, Attorney Persad blatantly used Attorney Sheesley's race against him by continuously referring to him as a "white colonialist" throughout the deposition.[66] "The principle that individuals should not be discriminated against on the basis of traits for which they bear no responsibility makes discrimination against individuals on the basis of immutable characteristics repugnant to our system." *See Novotny v. Great American Federal Savings & Loan Ass'n*, 584 F.2d 1235, 1243 (3d Cir. 1978) (*rev'd on other grounds*, 442 U.S. 366 (1979)). Here, it is clear Attorney Persad is using Attorney Sheelsey's immutable characteristic of skin color against him in an attempt to distort the events of a

---

[64] *See* Defendant's Motion for Sanctions, at 18.
[65] *See* Defendant's Motion for Sanctions, at 5-6.
[66] *See* McLaughlin's Deposition at 56, 120-121.

property sale contract during and following a deposition.[67] Remarkably, Attorney Sheesley's conduct

remained composed as he attempted to finish the deposition despite the offensive accusations levied

against him.

¶49.     The legal system is adversarial in nature and the line between animosity and zealous advocacy

can be blurred, but that does not warrant sanctions on an attorney for trying to progress his case. In

*The Florida Bar v. Buckle*, the court stated,

> "[w]e must never permit a cloak of purported zealous advocacy to conceal
> unethical behavior. At the same time, we must also guard against hollow claims of
> ethical        impropriety        precluding        proper advocacy for        a        client.…
> Zealous advocacy cannot be translated to mean win at all costs, and although
> the line may be difficult to establish, standards of good taste and professionalism must
> be maintained while we support and defend the role of counsel in proper advocacy."

*The Florida Bar v. Buckle*, 771 So.2d 1131, 1133 (Fla. 2000). This notion was further emphasized in

*Otis v. Demarasse*, 399 F.Supp.3d 759, 766 (E.D. Wis. 2019) which held:

> "[C]ourts must exercise care in deciding whether to impose sanctions so as not to
> sanction attorneys who zealously represent their clients within the bounds of the law
> and in conformity with the code of professional responsibility, no matter
> how frustrated their adversaries may find opposing counsel's manner of representation
> and how confident those adversaries are with their own position."

This Court similarly emphasizes that uncivilized behavior has no place in the legal profession.[68] The

Seventh Circuit Judicial Committee on Civility defined incivility as: "rudeness, hostility, abrasive

conduct, and strident personal attacks on opponents."[69] Incivility amongst counsel can have the

consequence of the public questioning the integrity of the judicial process. "When lawyers place a

---

[67] *See Regents of Univ. of Cal v. Bakke*, 438 U.S. 265M 360 (1978) (*stating* "[R]ace, like gender and illegitimacy, is an immutable characteristic which its possessors are powerless to escape or set aside.").

[68] *See Bailey v. Board of Professional Responsibility*, 441 S.W.3d 223, 234 (Tenn. 2014) (commenting "[w]hen zealous advocacy degenerates into impertinent, scandalous, and insulting language, it is the court's duty to address squarely the offending conduct, and to tailor a sanction appropriate to the offense.").

[69] *See* Brassler, J. *Lost Cause or Last Chance for Civility*, N.J. Law Journal, op. ed. at 23, July 10, 1995.

higher value on being heard than on being understood, when they trample on civility, or when their supposed devotion to their clients leads to stridency or worse, they undercut the belief in the law and in the legal profession." *Huggins v. Coatesville Area School Dist.*, 2009 WL 2973044 *1 (E.D. Pa. 2009). The line between what is ethical and what is civil is often blurred and mischaracterized. "General uncivilized or 'unlawyerlike' conduct may not constitute a technical violation of the ethical rules, but such conduct is a stain on the legal profession and often delays the judicial process." *Kohlmayer v. National R.R. Passenger Corp.*, 124 F.Supp.2d 877, 879 (D. N.J. 2000). The meaningful distinction lies in the inherent authority of the Court to manage the conduct of attorneys who appear before it. *See Fenster v. deChabert*, at *2. Civility is not only about proper manners, but is crucial in upholding the integrity of the Judiciary and the administration of justice.

¶50.    While Attorney Sheesley's conduct in the instances described may be different from Attorney Persad's perception of how he should act, the Court is not persuaded that Attorney Sheesley's conduct has been racially motivated. Rather, it appears that Attorney Persad sought out any conduct he could find to request sanctions against Attorney Sheesley. For this Court to find that Attorney Sheesley exhibited racist conduct when the nature of his conduct is strictly adversarial would set a dangerous precedent. This Court agrees with the Plaintiffs that if the Court were to sanction an attorney because of opposing counsel's perceptions, then "[e]very time an adversary does something adversarial, [counsel] will accuse a fellow member of the bar of a microaggression. [Hence,] the Superior Court would then be compelled to adjudicate whether perfectly normal adversarial behavior is perceived by [opposing counsel] as a microaggression."[70] Such practice will result in a complete diversion from

---

[70] Plaintiff's Response for Motions for Sanctions, at 3-4.

the pursuit and fair administration of justice. Accordingly, Attorney Persad's motion for sanctions must be denied.

## CONCLUSION

¶51.    *Ad hominem* attacks on each other "exemplifies what happens when professionals allow their personal animosities to carry over into and infect the performance of their profession." *Griffith v. Hess Oil Virgin Islands Corp.*, 5 F.Supp.2d 336, 340 (D.V.I. 1998). The Court strongly warns that incivility and poor collegial conduct will not be tolerated by the Court. The Court considers the allegations of racism very serious. The Court finds the Defendant's unsubstantiated accusations severe, and given the gravity of these allegations, the Court has restricted both motions and the respective responses from the public domain. For the foregoing reasons, both motions will be denied. An appropriate Order follows.

Dated: December 30, 2021

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor  12/31/2021

Renée Gumbs Carty
Judge of the Superior Court
of the Virgin Islands

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS/ ST. JOHN

| | | |
|---|---|---|
| WILLIAM DUGGER and<br>SUSAN PITTEL,<br><br>   Plaintiffs,<br><br>   v.<br><br>NISHA JONES,<br><br>   Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO. ST-20-CV-181<br><br>ACTION FOR BREACH OF<br>CONTRACT, SPECIFIC<br>PERFORMANCE, AND<br>DECLARATORY JUDGMENT<br><br>**<u>JURY TRIAL DEMANDED</u>** |
| NISHA JONES,<br><br>   Counterclaim Plaintiff,<br><br>   v.<br><br>WILLIAM DUGGER and<br>SUSAN PITTEL,<br><br>   Counterclaim Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO. ST-20-CV-181<br><br>ACTION FOR BREACH OF<br>CONTRACT<br><br>Cite as 2021 VI Super 120U |

**MICHAEL L. SHEESLEY, Esq.**
Michael L. Sheesley, P.C.
P.O Box 307728
St. Thomas, Virgin Islands 00803
*Attorney for Plaintiffs/ Counter Defendants*

**TEE PERSAD, Esq.**
CPLS, P.A.
201 E. Pine Street, Suite 445
Orlando, Florida 32801
*Attorney for Defendant/ Counter Plaintiff*

**DANIEL L. CEVALLOS, Esq.**
Cevallos & Wong LLP
61 Broadway, Suite 2220
New York, New York 10006
*Attorney for Michael Sheesley*

**JALICHA PERSAD, Esq.**
CPLS, P.A.
201 E. Pine Street, 32801
Orlando, Florida 32801
*Attorney for Defendant/ Counter Plaintiff*

## ORDER

The Court having issued a Memorandum Opinion on this date, it is hereby

**ORDERED** that Plaintiffs' "Motion for Sanctions Related to the Deposition of Brice McLaughlin and Ethical Violations by Attorney Tee Persad" is **DENIED**; and it is further

**ORDERED** that Defendant's "Motions for Sanctions Against Attorney Michael Sheesley" is **DENIED**; and it is further

**ORDERED** that the **STAY** entered in this matter on February 10, 2021, is hereby **LIFTED**; and it is further

**ORDERED** that the parties shall meet and confer pursuant to V.I.R. Civ. P. 26(f), and file their proposed discovery and scheduling plan with the Court for review and approval by **January 14, 2022**; and it is further

**ORDERED** that both counsel are forewarned that an attorney or party which engages in unprofessional conduct will be sanctioned accordingly pursuant to V.I.R. Civ. P. 11 and fined starting at two thousand dollars (**$2,000**); and it is further

**ORDERED** that a copy of this Order and the accompanying Opinion shall be directed to Michael Sheesley, Esquire, Daniel Cevallos, Esquire, Tee Persad, Esquire, and Jalicha Persad, Esquire.

Dated: December 20, 2021

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
    Latoya Camacho
    Court Clerk Supervisor

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands